**GOMEZ TRIAL ATTORNEYS**
JOHN H. GOMEZ (171485)
*jgomez@thegomezfirm.com*
DEBORAH S. DIXON (248965)
*ddixon@thegomezfirm.com*
655 W. Broadway Suite 1700
San Diego, California 92101
Telephone: (619) 237-3490
Facsimile: (619) 237-3496

**DiCELLO LEVITT GUTZLER LLC**
GREG G. GUTZLER*
*ggutzler@dicellolevitt.com*
444 Madison Avenue, Fourth Floor
New York, New York 10022
Telephone: (646) 933-1000

**THE HABA LAW FIRM, P.A.**
LISA D. HABA*
*lisahaba@habalaw.com*
1220 Commerce Park Dr., Ste. 207
Longwood, Florida 32779
Telephone: (844) 422-2529

***Counsel for Plaintiffs***
*(*Pro Hac Vice Applications Pending)*
*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JANE DOE NOS. 1-3,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL S. FITZGERALD,<br><br>Defendant. | Case No: 2:20-cv-10713<br><br>**COMPLAINT** |

## COMPLAINT

This is a civil action for damages under the United States Federal sex trafficking statute, 18 U.S.C. §§ 1591, *et seq.* and other state laws, brought by Plaintiffs Jane Doe Nos. 1-3, arising from Defendant Daniel S. Fitzgerald's ("Defendant" or "Fitzgerald") participation in the sex trafficking venture of Peter J. Nygard ("Nygard"). Defendant knowingly participated in and conspired in Nygard, Nygard Inc., Nygard International Partnership ("Nygard International"), and Nygard Holdings Limited's ("Nygard Holdings") (collectively, the "Nygard Companies") sex trafficking venture. Defendant participated in the sex trafficking of Jane Doe Nos. 1-3 by knowingly engaging in commercial sex act(s) with them against their will at the behest of Nygard, in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA").

## INTRODUCTION

1. As detailed in *Jane Does Nos. 1-57 v. Nygard, et al.*, No. 20-cv-01288 (ER) (S.D.N.Y. June 10, 2020) (Ramos, J.), *John Does 1 and 2 v. Nygard, et al.*, No. 20-cv-06501 (ER) (August 16, 2020) (Ramos, J.), and *Jane Doe v. Suelyn Medeiros*, No. 20-cv-24357 (SDFL Oct. 22, 2020) (Martinez, J.), and a number of other related lawsuits, Nygard and the Nygard Companies perpetrated a decades-long, international sex trafficking venture that lured, enticed, and coerced countless girls, women, and boys to be raped.

2. Defendant has participated in and conspired with Nygard's sex trafficking venture by knowingly and actively engaging in commercial sex acts with young women provided to him by Nygard as part of Nygard's sweeping international sex trafficking venture.

3. Plaintiffs Jane Doe Nos. 1-3 are three such innocent victims of Defendant.

4. As a member of Nygard's sex trafficking venture, Defendant knowingly participated in the venture by engaging in commercial sex acts with

1  young women who he knew were being sex trafficked by Nygard and the Nygard

2  Companies and recruiting, luring, and enticing young women to engage in

3  commercial sex acts with Nygard.

4  **I.    Fitzgerald Engaged in Commercial Sex Acts with Jane Doe Nos. 1-3,**

5  **Knowing They Were Being Trafficked to Him by Nygard.**

6      5.    Fitzgerald knowingly participated in Nygard and the Nygard

7  Companies' sex trafficking venture by engaging in commercial sex acts with Jane

8  Doe Nos. 1-3, sex trafficking victims of Nygard and the Nygard Companies.

9      6.    Fitzgerald is a long-time friend and associate of Nygard who frequently

10  attends "pamper parties"[1] (events used by Nygard to lure and traffic his victims) and

11  knows of Nygard's sprawling sex trafficking venture.

12      7.    Fitzgerald, along with fellow co-conspirator Steven Powers, were

13  frequent guests of Nygard and attended Nygard's "pamper parties" and dinners at

14  Nygard's Marina Del Rey property in California, which are used to facilitate and

15  enable Nygard's sex trafficking scheme.

16      8.    Below is a photograph of Nygard and Fitzgerald with a number of

17  Nygard's "girlfriends," *i.e.* sex trafficking victims:



27  ---
[1] https://www.instagram.com/p/BehBmpwDZW-/;

28  https://www.instagram.com/p/BjmAvU2A86k/; https://www.instagram.com/p/BrMcKpBn28C/;
https://www.instagram.com/p/B3TwcWWAP2K/; https://www.instagram.com/p/B4I2E_OgQai/

9.    Fitzgerald also regularly attends "pamper parties" at Nygard's Marina Del Rey property, which are used to facilitate and enable Nygard's sex trafficking scheme.





4

10.     Fitzgerald openly promotes the Nygard image in order to recruit, lure, and entice young women to attend the "pamper parties" and events at Nygard's properties.

11.     Fitzgerald is even listed on Nygard Companies' employee contact lists as an employee.

12.     Fitzgerald has traveled on the Nygard Companies' corporate jet ("N-Force") to locations in South America, the Caribbean, and New York for the purpose of furthering and participating in the sex trafficking venture.

13.     Fitzgerald also knowingly recruits, lures, and entices young women to engage in commercial sex acts with himself and Nygard, flying them from, among other places, locations in Las Vegas, Nevada and San Jose, California.[2]

**<u>Jane Doe No. 1</u>**

14.     In 2018, Jane Doe No. 1, at the time an employee and sex working of the Nygard Companies and sex trafficking victim of Nygard and the Nygard Companies, met Fitzgerald and his female companion at Nygard's Marina Del Rey property.

15.     While in the jacuzzi with Nygard, Jane Doe No. 1, and another female, Nygard directed Jane Doe No. 1 to engage in commercial sex acts with Fitzgerald against her will.

16.     Fitzgerald then performed oral sex on Jane Doe No. 1, at Nygard's direction and against her will in the jacuzzi.

17.     Still acting under Nygard's directions and orders, Fitzgerald escorted Jane Doe No. 1 to a bedroom and engaged in sexual intercourse with her, at Nygard's direction and against her will, while Nygard had sexual intercourse with the other female provided by Fitzgerald at the same time.

**<u>Jane Doe No. 2</u>**

18.     In 2008, Jane Doe No. 2, at the time an employee and sex worker of the

---

[2] *See* https://www.instagram.com/p/B4I2E_OgQai/

1  Nygard Companies, and sex trafficking victim of Nygard and the Nygard Companies
2  met Fitzgerald and his female companion at Nygard's Marina Del Rey property.

3      19.    Jane Doe No. 2 was invited into a bedroom under false pretenses with
4  Nygard, Fitzgerald, and Fitzgerald's female companion.

5      20.    Nygard directed Jane Doe No. 2 to engage in commercial sex acts with
6  Fitzgerald against her will.

7      21.    At the time, Nygard knew that Jane Doe No. 2 did not identify as
8  heterosexual.

9      22.    With a complete disregard for Jane Doe No. 2's consent or wishes, Jane
10 Doe No. 2 was coerced and consequently did engage in sexual acts with Fitzgerald
11 while Nygard engaged in sexual acts with the other female provided by Fitzgerald.

12 **<u>Jane Doe No. 3</u>**

13     23.    In 2009, Jane Doe No. 3, at the time an employee and sex worker of the
14 Nygard Companies, and sex trafficking victim of Nygard and the Nygard Companies
15 met Fitzgerald and his female companion at Nygard's Marina Del Rey property.

16     24.    Jane Doe No. 3 was trafficked to Fitzgerald on three separate occasions
17 in 2009.

18     25.    On each of the three occasions, Fitzgerald came to Nygard's house for
19 dinner and poker, and each time, he brought a female companion.  During the course
20 of the evening, Jane Doe No. 3, was instructed by Nygard that she would be engaging
21 in sexual activity with Fitzgerald later that evening.

22     26.    After the social evening ended, Nygard and Fitzgerald took Jane Doe
23 No. 3 and Fitzgerald's female companion upstairs to Nygard's bedroom.

24     27.    Jane Doe No. 3 was coerced to engage in commercial sex acts with
25 Fitzgerald against her will.  Nygard watched Fitzgerald and Jane Doe No. 3 have
26 sexual intercourse for his own sexual gratification.

27     28.    During the course of the sexual acts, Nygard engaged in sexual acts
28 with Fitzgerald's female companion.

**Pattern of Conduct for a Decade**

29.     From 2008 until 2018, Nygard frequently traveled to California and stayed at his Marina Del Rey property.

30.     Almost every day, if not every day that Nygard was in town, Fitzgerald would come to the Marina Del Rey house for dinner, poker, and commercial sex acts.

31.     Fitzgerald's primary purpose in coming to Marina Del Rey each evening was to engage in commercial sex acts with one of Nygard's "girlfriends" or another girl provided by Nygard.

32.     In exchange for sex acts, Fitzgerald would always bring a female with him to "offer" to Nygard.

33.     In exchange for Fitzgerald's knowing recruitment, participation, and conspiracy in Nygard's continuing sex trafficking venture, Nygard forced his "girlfriends" and/or sex workers to perform commercial sex acts with Fitzgerald.

34.     Fitzgerald also uses his association with Nygard and attendance at "pamper parties" to benefit and promote himself and his business on social media.[3]

35.     Fitzgerald portrays himself as a playboy, entrepreneur, and partier that rents luxurious homes in Hollywood to celebrities and "influencers" for them to throw parties.[4]

**JURISDICTION AND VENUE**

36.     This Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs bring this action under the federal TVPRA statute, 18 U.S.C. § 1591; 1596.

37.     Plaintiffs Jane Doe Nos. 1-3's claims arise out of the same series of transactions or occurrences and share common questions of law or fact.   The

---

[3] *See* https://www.instagram.com/p/BehBmpwDZW-/; https://www.instagram.com/p/BjmAvU2A86k/; https://www.instagram.com/p/BrMcKpBn28C/; https://www.instagram.com/p/B3TwcWWAP2K/; https://www.instagram.com/p/B4I2E_OgQai/
[4] *See* https://www.dannyfitzgerald.com/; https://www.dannyfitzgerald.com/media

*Jane Doe Nos. 1-3 v. Daniel S. Fitzgerald*, Case No. 2:20-cv-10713
COMPLAINT

essential facts of Jane Doe Nos. 1-3's claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in a single lawsuit. There is also substantial overlap in questions of law or fact across Jane Doe Nos. 1-3's claims.

38.     This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs and the parties have complete diversity. Plaintiff Jane Doe No. 1 is a citizen of the state of Florida, Plaintiff Jane Doe No. 2 is a citizen of the state of Colorado, and Plaintiff Jane Doe No. 3 is a citizen of the state of Ohio. Defendant is a citizen of and is domiciled in the State of California, conferring personal jurisdiction, and is lawfully admitted to the United States for permanent residence and/or is present in the United States.

39.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because all claims alleged herein are part of the same nucleus of operative facts and there is complete diversity between the Plaintiffs and Defendant.

40.     Venue is proper in this District, under 28 U.S.C. § 1391(b)(2), because Defendant Daniel S. Fitzgerald knowingly engaged in sex trafficking in this District and, therefore, a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

### A.     Plaintiff Jane Doe Nos. 1-3

41.     Jane Doe No. 1 is a United States citizen that resides in Florida.

42.     Jane Doe No. 2 resides in Colorado.

43.     Jane Doe No. 3 is a United States citizen that resides in Ohio.

44.     They are using pseudonyms because of the highly personal nature of this matter.

45.     Plaintiffs are at serious risk of retaliatory harm because Defendant's co-conspirators, Nygard and the Nygard Companies, have tremendous wealth and

1  power and have used it to retaliate against others who have attempted to come
2  forward, including by means of arson, property destruction, threats of physical
3  violence, and threats of legal action.

4      46.     Plaintiffs are also vulnerable because of Defendant's co-conspirators'
5  wealth and influence in Canada and the United States, and the corruption of law
6  enforcement by the co-conspirators through bribery and political influence.[5]

7      47.     Plaintiffs' safety, right to privacy, and security outweigh the public
8  interest in their identification.

9      48.     Plaintiffs' legitimate concerns outweigh any prejudice to Defendant by
10 allowing Plaintiff Jane Doe Nos. 1-3 to proceed anonymously.

**B.    Defendant Daniel S. Fitzgerald**

12     49.     Defendant Daniel S. Fitzgerald is a California citizen who resides in
13 California and owns properties in California.  Fitzgerald is lawfully admitted to the
14 United States for permanent residence and/or is present in the United States.
15 Fitzgerald owns a real estate development company that conducts substantial
16 business in California.[6]

## THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT ("TVPRA")

19     50.     The TVPRA outlaws sex trafficking activities that affect interstate or
20 foreign commerce or take place within the territorial jurisdiction of the United
21 States.  It is to be construed broadly because it serves a remedial purpose and uses
22 intentionally broad language.

23     51.     The TVPRA makes it unlawful for:

24          (a) Whoever knowingly—

---

[5] *See, e.g.*, https://www.youtube.com/watch?v=Pw1xUXQNelg; http://www.tribune242.com/news/2018/feb/14/nygard-outright-bribery-plp/; http://www.tribune242.com/news/2014/jun/25/nygard-gave-money-plp-then-asked-help-over-land-is/; http://www.tribune242.com/news/2017/may/05/fresh-questions-over-las-vegas-trip-pm-gibson-and-/.
[6] https://www.dannyfitzgerald.com/aboutcontec.

*Jane Doe Nos. 1-3 v. Daniel S. Fitzgerald*, Case No. 2:20-CV-10713
COMPLAINT

(1) In or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States recruits, entices, harbor, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) Benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).[7]

52.    As alleged herein, Defendant knowingly used interstate and foreign commerce to violate the TVPRA by conspiring and collaborating with Nygard and the Nygard Companies to entice, lure, provide, obtain, and/or transport Jane Doe Nos. 1-3 to engage in commercial sex acts in California.

53.    In addition to violating the TVPRA, as alleged herein, Defendant conspired to violate and/or violated the laws of the State of California.

54.    Due to extraordinary circumstances and Defendants' co-conspirator's conduct, which prevented, to the extent applicable, Plaintiffs from bringing their claims, the applicable statute of limitations is equitably tolled for Plaintiffs' TVPRA claims.

55.    The general rule is that statutes of limitations are subject to equitable tolling. *See United States v. Locke*, 471 U.S. 84, 94 n.10 (1985) ("Statutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling."); *Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling unless tolling would

---

[7] 18 U.S.C. § 1591(a).

1  be inconsistent with the text of the relevant statute.") (quotation marks and citations

2  omitted).

3         56.    Plaintiffs, to the extent applicable here, pursued their rights diligently

4  and were impeded because of a combination of force, threats of force, shame,

5  embarrassment, fear, political and law enforcement corruption, weak laws that are

6  rarely enforced to protect the victim, and bribery.  As a result, to the extent necessary,

7  all applicable statutes of limitations should be equitably tolled.

8         57.    Defendants' co-conspirator, Nygard, is notorious for using his wealth,

9  political power, and influence in Canada, the United States, and the Bahamas to

10  intimidate his victims and prevent them from coming forward.[8]

11        58.    Nygard also uses violence, threats of violence, bribery, and corruption

12  to intimidate and silence his victims and those that he believes have "betrayed" him.

13  Nygard has silenced his victims by, among other means, having their tires slashed,

14  committing arson, hiring thugs to intimidate his victims, having his victims

15  followed, engaging in murder-for-hire plots, and otherwise threatening his victims

16  with death.

17        59.    Nygard also routinely threatens to use his wealth to sue and destroy the

18  reputation of anyone who comes forward to report his crimes.

19        60.    Further, Defendant has been actively communicating with Nygard and

20  the Nygard Companies on ways to flee the jurisdiction because they are under the

21  cloud of a pending FBI/DOJ investigation.

22        61.    Due to Defendant's conspiracy with Nygard and his close association

23  with him as a recruiter and fellow sex trafficker, Plaintiffs legitimately feared for

24  their life as well as other forms of retaliation if they pursued claims against

25  Defendant for trafficking them to Nygard.

26  / / /

27

28  [8] See Second Amended Complaint, *Jane Does Nos. 1-57 v. Nygard, et al.,* No. 20-cv-01288 (ER)
(June 10, 2020) (Ramos, J.).

62.     It wasn't until Nygard was sued in a class action lawsuit,[9] as well as investigated by the FBI,[10] that Plaintiffs felt they could pursue their claims without risk of harm or death.

63.     To the extent that Plaintiffs were unable to pursue their claims, they were legitimately and justifiably afraid that Defendant and/or Nygard would hard and/or retaliate against her is she pursued any claim against Defendants.

64.     Nygard uses his financial resources, political power, influence, and threats of force to intimidate his victims—including Plaintiffs—and prevent them from coming forward.

65.     In fact, just recently, Nygard's attorneys bribed high-level Bahamian police to determine the identities of victims who were reporting the rapes to officials. There is legitimate concern that Nygard has attempted or will attempt to do the same in the United States and Canada.

66.     Further, even after his victims leave his control, Nygard often continues to attempt to contact them, in an intimidating manner, intending to instill fear in his victims and remind them of his power and ability to hurt them.

67.     Due to his power and influence in the Bahamas and worldwide, Nygard's victims reasonably believe that he can have them killed if they pursue their claims against him or his co-conspirators, including Fitzgerald.

68.     It is widely believed that Nygard pays thugs and/or the Bahamian police to harass and threaten his victims by slashing their tires, committing arson, threatening to arrest them, and having them followed.

69.     Nygard's intimidation tactics are not limited to the Bahamas.

70.     Nygard is also believed to have tremendous influence with the Winnipeg police as well as City officials.

71.     Nygard also requires many of his victims and witnesses to his crimes

---

[9] *Id.*
[10] https://www.nytimes.com/2020/02/25/us/peter-nygard-international-fbi-raid.html.

to sign non-disclosure agreements.  Nygard regularly uses his companies' wealth to sue and/or threaten to sue his victims and/or witnesses if they come forward to report his crimes.

72. Nygard threatens to humiliate and/or destroy his victims' reputations if they come forward to report his crimes.

73. Nygard threatens to use his companies' wealth and influence to destroy his victims' careers in the modeling industry if they come forward to report his crimes.

74. Nygard's and Defendant's illegal conduct also constitutes a recurring pattern and practice of rape, sexual assault, and sex trafficking.

75. His rape, sexual assault, and sex trafficking have been occurring continuously, consistently, and systematically since, at least 1977 in violation of the TVPRA and various other state and foreign laws.

76. Under the continuing violation doctrine, the statute of limitations is tolled for all victims who have been subjected to his recurring, uniform pattern and practice of sex trafficking, which includes Plaintiffs.  Additionally, Plaintiffs' claims against Defendant are tolled because Defendant engaged in a continuing conspiracy to commit rape, sexually assault, sex trafficking, and subsequently cover up his crimes.

77. Unnamed third-party recruiters and facilitators, and upper-level executives with the Nygard Companies also conspired with Nygard to conceal his crimes for the benefit of Defendant.

78. Due to Defendant's efforts in keeping their conspiracy secret, their conspiracy was only discovered upon the filing of *Jane Does Nos. 1-57 v. Nygard, et al.*  Therefore, the statute of limitations for Plaintiffs' conspiracy claims is tolled under the discovery rule.

/ / /

/ / /

## CLAIMS ALLEGED

## COUNT I

## VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§1591(a)

79.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-78, as if fully set forth in this Count.

80.     Defendant knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. § 1591(a)(1), occurring both in and outside of the territorial jurisdiction of the United States.

81.     Defendant's conduct was in or affecting interstate or foreign commerce for purposes of the TVPRA.

82.     Defendant knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiffs for the purpose of causing them to engage in commercial sex acts through force, fraud, or coercion, pursuant to 18 U.S.C. § 1591(a).

83.     Nygard, Defendant's co-conspirator, received something of value from the sexual acts engaged in between Defendant and Plaintiffs.  Furthermore, Defendant's co-conspirators provided Plaintiffs with U.S. currency and/or items of value after Defendant engaged in commercial sex acts with Plaintiffs.

84.     Defendant's conduct has caused Plaintiffs serious and permanent harm, including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

/ / /

/ / /

/ / /

## <u>COUNT II</u>

### PARTICIPATING IN A VENTURE IN VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§1591(a)

85.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-78, as if fully set forth in this Count.

86.    Defendant participated in a venture with Nygard and the Nygard Companies, in violation of 18 U.S.C. § 1591(a)(2).

87.    Defendant knowingly benefited from, and received value for, his participation in the venture, in which Defendant and Nygard would lure, entire, recruit, solicit, provide, obtain, and transport Plaintiffs, to engage in commercial sex acts with Defendant.

88.    Defendant knew, or was in reckless disregard of the fact, that it was Nygard's pattern and practice to use the channels and instrumentalities of interstate and foreign commerce, as well as the Nygard Companies' resources to entice, recruit, solicit, or cause young and underage individuals to engage in commercial sex acts, and offering something of value in exchange for the sexual act.

89.    Defendant had actual knowledge that he was facilitating and participating in Nygard's use of company resources to recruit, entice, harbor, transport, provide, obtain, maintain, patronize, and/or solicit Plaintiffs and others, through force, fraud, or coercion, into commercial sex acts.

90.    Despite such knowledge, Defendant facilitated and participated in Nygard's violations of 18 U.S.C. § 1591, where Defendant knew, or was in reckless disregard of the facts that, Nygard would lure, entice, harbor, transport, provide, obtain, maintain, patronize, and/or solicit Plaintiffs, through force, fraud, or coercion, to engage in commercial sex acts.

91.    Defendant and/or Defendant's co-conspirators also provided or promised Plaintiffs items of value in exchange for engaging in the sexual acts with Defendant, including flights, lodging, and cash.

92.     In exchange for facilitating, participating in, and covering up Nygard's scheme, Defendant received significant financial benefits and online exposure to promote and grow his own company.

93.     Defendant's conduct has caused Plaintiffs serious harm including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

## COUNT III

### CONSPIRACY TO COMMIT VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§1594

94.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-78, as if fully set forth in this Count.

95.     Defendant conspired, by agreement or understanding, to further Nygard's unlawful plan and/or purpose to commit illegal commercial sex acts with Plaintiffs.

96.     Defendant committed overt acts in furtherance of the agreement or understanding by playing an active role in trafficking Plaintiffs by engaging in commercial sex acts with them.

97.     Defendant and/or his co-conspirators provided or promised Plaintiffs items of value in exchange for engaging in the sexual acts with Defendant, including but not limited to, air flights, lodging, food, and cash.

98.     Defendant's participation in the furtherance of Nygard's illegal sex trafficking plan and/or purpose was intentional and/or willful and, therefore, Defendant intentionally and/or willfully caused Nygard's facilitation of the sex acts with Plaintiffs in his affirmative acts supporting Nygard.

99.     Defendant knew that his acts and conduct supporting and facilitating

Nygard would lead to unlawful commercial sex acts facilitated by Nygard and involving Plaintiffs.

100. Defendant conspired with Nygard through his affirmative acts and provided substantial support to Nygard causing commercial sex acts upon Plaintiffs.

101. Defendant's conduct has caused Plaintiffs serious harm, including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

## COUNT IV

### SEXUAL BATTERY IN VIOLATION OF CALIFORNIA CIVIL CODE § 1708.5 AND COMMON LAW

102. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-78, as if fully set forth in this Count.

103. Defendant intentionally committed sexual battery on both Plaintiffs in the State of California in violation of California law.

104. Defendant acted with the intent to cause a harmful and offensive contact with an intimate part of Plaintiffs and a sexually offensive contact directly or indirectly resulted.

105. Defendant acted with the intent to cause a harmful and offensive contact with Plaintiffs, by use of his intimate part and a sexually offensive contact directly or indirectly resulted.

106. Defendant also acted to cause an imminent apprehension or fear of a harmful and offensive contact with Plaintiffs' intimate parts.

107. Plaintiffs did not consent to Defendant's harmful and offensive contact and/or were coerced in to such harmful and offensive contact.

108. Plaintiffs were harmed and/or offended by Defendant's conduct.

Defendant's conduct has caused Plaintiffs serious and permanent harm and/or damages, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## COUNT V

### CIVIL CONSPIRACY IN VIOLATION OF CALIFORNIA LAW

109.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1-78, as if fully set forth in this Count.

110.   Defendant, Nygard, and the Nygard Companies have participated in the continuing conspiracy to commit sexual battery and to cover-up their conspiracy.

111.   Defendant formed a group of two or more persons and agreed to a common plan or design to commit tortious acts, including sexual battery.

112.   Defendant had actual knowledge that sexual battery was planned and concurred in the tortious scheme with knowledge of its unlawful purpose.

113.   Defendant intended to aid in the commission of the planned tort, including sexual battery.

114.   Defendant committed numerous wrongful acts, including sexual battery, against Plaintiffs occurring in the State of California pursuant to their agreement.

115.   Defendant conspired with Nygard and the Nygard Companies because he desired commercial sex acts from Plaintiffs and other victims of Nygard's sex trafficking venture.

116.   This affirmative conduct of Defendant was committed by express and/or implied agreement that Nygard would use the Nygard Companies' money and brand, the promise of a modeling career, and his influence in the fashion industry to facilitate and/or enable the sexual battery of Plaintiffs.

117.   Plaintiffs were damaged as a direct result of Defendants' agreement and actions.

118.   Defendant's conduct has caused Plaintiffs serious and permanent harm

and/or damage, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court enter judgment in their favor, and against Defendant, as follows:

a.      That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts and practices described herein;

b.      That the Court award Plaintiff compensatory, consequential, general, and normal damages in an amount to be determined at trial;

c.      That the Court award punitive or exemplary damages in an amount to be determined at trial;

d.      That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

e.      That the Court award pre- and post-judgment interest at the maximum legal rate; and

f.      That the Court grant all such other relief as it deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 24, 2020          By:     /s/ Deborah S. Dixon
                                          John H. Gomez
                                          Deborah S. Dixon
                                          **GOMEZ TRIAL ATTORNEYS**
                                          655 West Broadway, Suite 1700
                                          San Diego, California 92101
                                          Telephone: (619) 237-3490
                                          john@gomeztrialattorneys.com
                                          ddixon@gomeztrialattorneys.com

                                          Greg G. Gutzler*
                                          **DiCELLO LEVITT GUTZLER
                                          LLC**

19

444 Madison Avenue, Fourth Floor
New York, New York  10022
Tel.:  646-933-1000
ggutzler@dicellolevitt.com

Lisa D. Haba*
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Ste. 207
Longwood, Florida  32779
Tel.:  844-422-2529
lisahaba@habalaw.com
***Counsel for Plaintiffs***

* *Pro Hac Vice* applications pending

*Jane Doe Nos. 1-3 v. Daniel S. Fitzgerald*, Case No. 2:20-cv-10713
COMPLAINT