BRANDON TAKAHASHI (SBN 248883)
btakahashi@tallbridgelegal.com
TALLBRIDGE LEGAL, P.C.
4223 Glencoe Ave, Ste A220,
Marina del Rey, CA 90292-5671
Telephone: (323) 741-6500

ERNEST EDWARD BADWAY
EBadway@FoxRothschild.com
(Admitted pro hac vice)
FOX ROTHSCHILD LLP
101 Park Ave., 17th Floor
New York, NY 10178
Telephone: (212) 878-7900
Facsimile: (212) 692-0940

Attorneys for Defendant,
DANIEL S. FITZGERALD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE NOS. 1-10,<br><br>Plaintiffs,<br><br>vs.<br><br>DANIEL S. FITZGERALD,<br><br>Defendant. | Case No. 2:20-CV-10713-MWF-RAO<br><br>Honorable Michael W. Fitzgerald<br><br>**DEFENDANT'S MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT OF PRELIMINARY INJUNCTION**<br><br>Complaint Filed: November 24, 2020<br>Trial Date: None Set |

128834375.3

# TABLE OF CONTENTS

I.   FACTS……………………………………………………………………1

II.  LEGAL STANDARD………………………………………………… 8

III. ARGUMENT………………………………………………………… 8

    A. DEFENDANT IS LIKELY TO SUCCEED ON THE MERITS……….. 8

        1.   Harassment of Defendant or witnesses...………………… 8

        2.   Pretrial Publicity…………………………………………..10

        3.   Payment of Plaintiffs or witnesses……………………... 11

    B. DEFENDANT HAS ADEQUATELY ESTABLISHED IRREPARABLE HARM ..…………………………………………… 12

    C. BALANCE OF EQUITIES AND PUBLIC INTEREST……………… 13

IV.  CONCLUSION……………………………………………………………14

# TABLE OF AUTHORITIES

*Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959)…………………… 12

*Catletti ex rel. estate of Catletti v. Rampe*, 334 F.3d 225 (2d Cir. 2003)…… 2, 13

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)………………………….… 8

*Dam v. Hodges*, No. CV186757DMGPLAX, 2019 WL 2610957
 (C.D. Cal. Apr. 19, 2019)………………………………………………. 12

*De Long v. Hennessey*, 912 F.2d 1144 (9th Cir.1990)……………………... 12

*Doe v. Rose, No*. CV-15-07503-MWF-JCX, 2016 WL 9107137
 (C.D. Cal. Sept. 30, 2016)……………………………………………… 10, 11

*Dyll v. Adams*, 1997 WL 222918 (N.D.Tex.1997)…………………………. 11

*Ford v. Wainwright*, 477 U.S. 399 (1986)………………………………….. 12

*Holt v. Cont'l Grp., Inc.*, 708 F.2d 87 (2d Cir. 1983)………………………. 12

*Levine v. U.S. Dist. Ct. for Cent. Dist. of California*, 764 F.2d 590
 (9th Cir. 1985)……………………………………………………….… 10

*Lewis v. S. S. Baune*, 534 F.2d 1115 (5th Cir. 1976)………………………. 9

*Patel v. 7-Eleven, Inc.*, No. CV1400519PSGDTBX, 2015 WL 9701133
 (C.D. Cal. Apr. 14, 2015) ………………………………………………

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ………………… 13

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)……………… 8

*Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 2318923
 (N.D. Cal. Aug. 13, 2007)……………………………………………… 9

Defendant moves for a preliminary injunction enjoining the Jane Doe Plaintiffs, their counsel, and agents working for their counsel from harassing and intimidating Defendant and witnesses, publicizing defamatory information about Defendant and information about the litigation more broadly, and compensating the Plaintiffs or witnesses for their participation or testimony.

## I.     FACTS

The following facts are relevant to Defendant's request for injunctive relief:

*Public false statements by Plaintiff Doe No. 5*

Jane Doe No. 5 has used her public social media channels to make a number of defamatory statements and videos about Defendant and others, including statements that Defendant and his associates "are being investigated for pedophilia, rape[,] all kinds of disgusting things" (Doc. 78-1, Fitzgerald Decl. ¶ 13 and Exhibit 2 thereto; Second Fitzgerald Decl. ¶ 3), that Defendant is a "rapist pedophile" (Second Fitzgerald Decl. ¶ 3), and asking her numerous followers to "tell him to leave me alone pls and stop raping people/having sex w minors" (Doc. 78-1, Fitzgerald Decl. ¶ 14 and Exhibit 3 thereto).

*Threats communicated by Plaintiff Doe No. 5 and her followers.*

Jane Doe No. 5's statements are not limited to just defamation—she has also directly threatened Defendant and caused third-parties to threaten Defendant. These threats include posts to her social media making calls to action such as:

- "If anyone of you guys see him in Cabo please make sure to burn him and his kook friends on every wave" (Doc. 78-1, Fitzgerald Decl. ¶ 13 and Exhibit 2 thereto; Second Fitzgerald Decl. ¶ 3);
- "Burn this kook", including a picture of Defendant (Doc. 78-1, Fitzgerald Decl. ¶ 13 and Exhibit 2 thereto; Second Fitzgerald Decl. ¶ 3).

Jane Doe No. 5 has also publicly posted her communications with others who have expressed an intention to harm Defendant, such as the examples below intimating that she has friends who will "look for [Defendant] in Mexico" and that if Defendant goes

to Hawaii he will "disappear", as threats aimed at Defendant. (Doc. 78-1, Fitzgerald Decl. ¶ 14 and Exhibit 3 attached thereto; Second Fitzgerald Decl. ¶ 5)

Similarly, Jane Doe No. 5 has made public social media posts with direct threats—such as Instagram videos in which she stated that "if they [Defendant] come around, I will fucking straight run his ass, his fat holly ass over with my fucking car…take me to jail, like I don't even care" and that Defendant "was gonna get so fucked up if he stayed there, his car was gonna get fucked up because he's now stalking me…." (Second Fitzgerald Decl. ¶ 7).

As a result, Defendant has been contacted by numerous followers of Jane Doe No. 5. (Doc. 78-1, Fitzgerald Decl. ¶ 15 and Exhibits 3 and 4 attached thereto; Second Fitzgerald Decl. ¶ 4). Mr. Fitzgerald fears for his safety and the safety of his family and friends, and can no longer travel to Mexico and Hawaii for fear of violence from Jane Doe No. 5 or her associates. (Second Fitzgerald Decl. ¶ 8).

Moreover, Jane Doe No. 5 made a false report to Mexican police authorities and to a hotel where Defendant and others were staying, causing them to be interrogated and frightened. (Doc. 78-1, Fitzgerald Decl. ¶ 10; Declaration of Ariel Mark ¶¶ 14-15).

*Harassment and Intimidation of Witnesses*

The harassment and intimidation is not limited to Defendant. Jane Doe No. 5 also sent threatening text messages to an individual who traveled with Defendant to Los Cabo, Mexico based on his association with Defendant. (*See generally* Decl. of Ariel Mark). In those text messages, Jane Doe No. 5 indicated to Ariel Mark that, *inter alia*:

- Defendant was "going to get it from my people . . . I am putting the word out", followed by screenshots of other messages from third parties that express an intention to harm ;
- "I will kill you both if you come near me . . . This is a promise"; and
- "If you come near me with Danny I will kill you both";

(Decl. of Ariel Mark ¶ 7 and Exhibit A attached thereto).

2

DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

128834375.3

As noted above, Jane Doe No. 5 made false reports in Mexico that caused Mr. Mark to be detained and interrogated, causing him severe distress. (Decl. of Ariel Mark ¶¶ 14-15).

Based on the extreme nature of Jane Doe No. 5's communications and the steps she has made to communicate these wishes to others, Mr. Mark fears retribution from Jane Doe No. 5 that will affect his personal safety and professional reputation. (Decl. of Ariel Mark ¶ 7).

Jane Doe No. 5 is not the only person engaging in these harassing tactics. Plaintiffs' counsel previously sued Steven Powers, making nearly identical allegations under the TVPRA. (*See generally* Jane Doe v. Steven Powers, 2:20-CV-10714 (C.D.CA)). According to Mr. Powers, Plaintiffs' counsel indicated that he had been "subpoenaed" for his records, but rather than going through normal processes for collecting documents, counsel had "two goons camped out of my home to enforce the subpoena" and have him execute a declaration favorable to Plaintiffs. (Doc. 108-2, Exhibit 2 to Badway Declaration (Powers email Nov. 17, 2021)).

Jane Roe had previously executed a declaration demonstrating facts detrimental to the case of at least one of the Plaintiffs—including that she has been paid to make false statements. (Doc. 108-3, Exhibit 4 to Badway Declaration (Decl. of Jane Roe) at ¶¶ 7-12, 16-120). Consequently, a private investigator named Gary Marchetti has been following and aggressively contacting Jane Roe, indicating that she may be "in trouble" soon, and asking questions about her knowledge of Steve Powers and Defendant. (Second Declaration of Jane Roe ¶¶ 2, 9-10). Jane Roe confirms that Mr. Marchetti was one of the individuals, who was present when one of the Plaintiffs was paid, and that Mr. Marchetti expressed that he was "hired by Louis Bacon and Lisa Haba." (*Id*. ¶¶ 6-7). Jane Roe is in extreme fear for her life, as she believes that her knowledge of the genesis of allegations in this suit and others are false and the result of paid testimony.

(*Id*. ¶¶ 9, 12). In fact, Mr. Marchetti has recently contacted Jane Roe's significant other, forcing Jane Roe to end the relationship for fear that she would be harmed. (*Id*. ¶ 11).

Mr. Marchetti is affiliated with at least two of Plaintiffs' counsel—Greg Gutzler and Lisa Haba. (Doc. 108-2, Exhibit 7 to Badway Declaration). This harassment has continued despite Defendant's counsel explicitly requesting that Plaintiffs' counsel and Mr. Marchetti cease and desist harassing and intimidating witnesses, (Doc. 108-2, Exhibit 8 to Badway Declaration).

*Public statements and publicity by Plaintiffs' counsel*

Plaintiffs' counsel has pushed their litigation themes into the public sphere, presenting an inaccurate and prejudicial narrative surrounding Defendant. For example, Plaintiff's counsel has appeared on publications involving nationally-known figures such as Chris Hansen, making unfounded allegations about Mr. Fitzgerald as fact:



**Figure 1**
(Second Fitzgerald Decl. ¶ 10)[1]

---

[1] For the Court's convenience, the video is currently available at https://www.youtube.com/watch?v=1ukYJcCcbUY&t=245s (last visited December 15, 2021)

4
DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

128834375.3

Likewise, the Plaintiffs' counsel have systematically disseminated publications about Defendant as well. (Second Fiztgerald Decl. ¶ 9). At least one of the media outlets confirm that the publication was requested by Plaintiffs' counsel, not normal media reporting. (Doc. 78-1, Fitzgerald Decl. ¶ 20).

Plaintiffs' counsel's strategy of litigating this case through the media has already taken hold. Other outlets have begun using Plaintiffs' counsel's filings and media postings to further amplify Plaintiffs' unfounded narrative, such as the videos represented by Figures 2-4 below.



**Figure 2**[2]

---

[2] Available at https://www.youtube.com/watch?v=i3OAVNOeBmk (last visited December 14, 2021)



**Figure 3**[3]

---
[3] Available at https://www.youtube.com/watch?v=Ajt6NJVThYs (last visited December 14 , 2021)

DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

128834375.3



**Figure 4**[4]

Defendant has already recognized harm from this publicity, losing potential tenants in his properties due to the unproven allegations made by anonymous Plaintiffs and compounded by their counsel. (Second Fitzgerald Decl. ¶ 11).

*Payment of Witnesses/Plaintiffs*

Most concerning, at least two individuals have now submitted declarations with testimony indicating that some of the Plaintiffs have been paid to make false allegations. Jane Roe testified that she was aware that one of the Jane Doe Plaintiffs—with whom she had a personal relationship—had been paid to make false allegations as a means of income. (Doc. 108-2, Exhibit 4 to Badway Decl., (Decl. of Jane Roe) ¶¶ 7-12, 15-18).

---

[4] Available at https://www.youtube.com/watch?v=jBbrgn1IKtU (last visited December 14, 2021)

Now, another individual named Candy Sumlin has testified that she was "called multiple times through different numbers by Lisa Haba and other anonymous people," where "they offered me money to testify against Peter Nygerd with untrue fabricated illicit statements." (Sumlin Decl. ¶ 5). Ms. Sumlin indicates that other friends have had to "change[] their telephone numbers because they were harassed by Lisa Haba due to her regular phone calls through different telephone lines with the intent to get us to lie against Peter Nygard." (Sumlin Decl. ¶ 6).

The testimony of these two individuals is even consistent with statements by one of the Plaintiffs. Before joining this lawsuit, Jane Doe No. 5 indicated to Defendant that she though persons making statements regarding Peter Nygard were "getting paid." (Doc. 78-1, Fitzgerald Decl. at Exhibit 6).

## II. LEGAL STANDARD

A party "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## III. ARGUMENT

The Court should enter an order enjoining the Plaintiffs, their counsel, and any agents working on behalf of either from harassing and intimidating Defendant and witnesses, publishing defamatory content about Defendant, publicizing the lawsuit, and compensating plaintiffs or witnesses.

### A. DEFENDANT IS LIKELY TO SUCCEED ON THE MERITS.

#### 1. *Harassment of Defendant and witnesses.*

As the Plaintiffs have already set forth in their prior request for injunction, the Court has the inherent power to manage their own proceedings and to control the conduct of those who appear before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991) ("Courts of justice are universally acknowledged to be vested, by their very

creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates"); *see also De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) ( "[T]here is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.").

This inherent power includes injunctive relief "against litigants who harass their opponents." *Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007) (citing *De Long*, 912 F.2d at 1147); *see also Lewis v. S. S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976) ("Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants.").

Jane Doe No. 5's harassment and threats of Defendant and other third parties associated with him are more than sufficient to justify the exercise of the Court's inherent powers. If death threats do not suffice as a basis to restrain a litigant, then nothing possibly could.

The harassment by Plaintiff's counsel or their agents of witnesses should likewise be enjoined. Jane Roe has been followed by Gary Marchetti, and has been consistently inundated with communications, including warning her that she is "in trouble." (Second Decl. of Jane Roe ¶ 2 and Exhibit 1 thereto; Doc. 108-2, Exhibit 5 to Badway Decl.). So has her significant other—so much so that Jane Roe ended the relationship for fear of her safety. (*Id.* ¶ 11). Jane Roe is understandably terrified. (*Id.* ¶ 12). There is little question that Mr. Marchetti is affiliated with Plaintiffs' counsel, as Jane Roe has explained, and additional public information confirms. (*Id.* ¶¶ 6-7; Doc. 108-2, Exhibit 7 to Badway Decl.).

Candy Sumlin further confirms that Plaintiffs' counsel needs to be restrained, as she has confirmed that Plaintiffs' counsel, Lisa Haba, persisted in harassing her and others—to the extent that some individuals needed to change their phone numbers. (Decl. of Candy Sumlin ¶¶ 5-6).

This harassment of Defendant and other witnesses must end. The Court should enter the appropriate restrictions on the Plaintiffs, their counsel, and others working on their behalf.

### 2. Pretrial publicity

Plaintiffs and their counsel should be enjoined from further publicizing the lawsuit and trying the case in the media.

Even for non-harassing conduct, a restraining order or injunction against the attorneys appearing in the action is permissible. As the Ninth Circuit has explained, "[t]he case for restraints on trial participants is especially strong with respect to attorneys." *Levine v. U.S. Dist. Ct. for Cent. Dist. of California*, 764 F.2d 590, 595 (9th Cir. 1985) (affirming propriety of restraining order against attorneys but remanding for additional tailoring of restrictions). Accordingly, "[t]he overwhelming majority of those courts [considering injunctions against attorneys and trial participants] have upheld the restraining orders." *Id.* at 596 (collecting cases).

Further, "[a]n order narrowly restricting the speech of attorneys and trial participants is more likely warranted in highly publicized cases because 'the circus-like environment that surrounds highly publicized trials threatens the integrity of the judicial system.'" *Doe v. Rose, No*. CV-15-07503-MWF-JCX, 2016 WL 9107137, at *2 (C.D. Cal. Sept. 30, 2016) (Fitzgerald, J.) (quoting *Levine*, 764 F.2d at 598).

As shown in the Facts, Plaintiffs' counsel has advanced unproven themes as facts in high-profile publications, and further affirmatively sought widespread dissemination of the case. (Second Fitzgerald Decl. ¶ 10). Their efforts have not been in vain— additional outlets have begun to advance these same themes. (*See* Figures 4-6, *infra*).

The attempt to imprint a false narrative about Defendant in the public through the is particularly concerning given the revelation of Jane Roe, who states that one of Plaintiffs' counsel's strategies as to "creat[e] a documentary about Mr. Fitzgerald in

order to create more evidence against him[.]" (Doc. 108-2, Exhibit 4 to Badway Decl. (Jane Roe Decl.) at ¶ 20).

Plaintiffs are attempting to litigate this case in a "circus-like environment" in the wake of the Peter Nygard case—that will "threaten the integrity of the judicial system" and "obstruct the fair administration of justice." *Rose*, No. CV-15-07503-MWF-JCX, 2016 WL 9107137, at *2. Unless otherwise enjoined, by the time this case reaches trial, Defendant will be unable to select a jury that has not been exposed to Plaintiffs' inaccurate media narrative. Accordingly, an order enjoining Plaintiffs' counsel from public statements about the litigation is warranted and necessary.

### 3. *Payment of Plaintiffs or witnesses*

Perhaps most critically, the Court has the authority to enjoin conduct that would fundamentally undermine the administration of justice, including improperly paying witnesses or the Plaintiffs themselves for testimony.

Payment of a witness for the content of her testimony is improper. *Patel v. 7-Eleven, Inc.*, No. CV1400519PSGDTBX, 2015 WL 9701133, at *2 (C.D. Cal. Apr. 14, 2015). So too is using the leverage of reinstituting a lawsuit in exchange for testimony. *Dyll v. Adams*, 1997 WL 222918, at *2 (N.D.Tex.1997) (holding that an offer by Dyll's attorney to drop Dyll's case against Adams in exchange for Adams' promise to provide testimony in a related matter was an unethical quid pro quo).

At this point, even before discovery, there are numerous independent individuals stating that Plaintiffs have been paid or have been offered payment for their participation in these lawsuits—<u>Jane Roe</u> (Doc. 108-2, Exhibit 4 to Badway Decl., (Decl. of Jane Roe) ¶¶ 7-12, 15-18), <u>Candy Sumlin</u> (Sumlin Decl. ¶ 5), <u>Steven Powers</u> (Doc. 108-2, Exhibit 1 to Badway Decl. (Powers text messages) at p. 8 of 62), and <u>Jane Doe No. 5</u> (Doc. 78-1, Fitzgerald Decl. at Exhibit 6).

Similarly, Steven Powers has stated that he completed his declaration under the threat of Plaintiffs' counsel "reinstituting my suit." (Doc. 108-2 (Powers text messages) at p. 5 of 62).

An injunction is absolutely warranted to prevent improper payment or use of leverage in exchange for testimony or, worse, making allegations as a plaintiff.

### B. DEFENDANT HAS ADEQUATELY ESTABLISHED IRREPARABLE HARM.

Defendant has also established irreparable harm sufficient to warrant an injunction. The threats of death and bodily harm to Defendant alone are sufficient, because death is the "most irremediable and unfathomable" harm. *Ford v. Wainwright*, 477 U.S. 399, 411 (1986); *see also Dam v. Hodges*, No. CV186757DMGPLAX, 2019 WL 2610957, at *4 (C.D. Cal. Apr. 19, 2019) ("The threat of bodily harm is serious enough risk of irreparable injury to warrant mandatory injunctive relief.").

Similarly, the threats to other witnesses such as Jane Roe, Ariel Mark, and Steven Powers also present irreparable harm *to Defendant* if not otherwise enjoined. Several witnesses have expressed hesitance to come forward with particularly relevant information. (*E.g.*, Decl. of Ariel Mark ¶ 14; Doc. 108-2, Exhibit 4 to Badway Decl. (Jane Roe Decl.) at ¶ 20). If they are successful in intimidating witnesses from giving truthful testimony, Defendant will be left without the ability to mount a defense. There is no legal recourse for a judgment entered against Defendant because the evidence is unavailable. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.").

Moreover, allowing Plaintiffs to intimidate these witnesses will only condone a rippling effect that would deter other witnesses from coming forward on Defendant's behalf. *See Holt v. Cont'l Grp., Inc.*, 708 F.2d 87, 91 (2d Cir. 1983) ("A retaliatory discharge carries with it the distinct risk that other employees may be deterred from

protecting their rights under the Act <u>or from providing testimony for the plaintiff in her effort to protect her own rights. These risks may be found to constitute irreparable injury</u>." (emphasis added)). There is no way to unwind the harm caused by a purposeful crippling of Defendant's defense.

Finally, Defendant has suffered financial harm from the publicized statements of Plaintiffs and their counsel because tenants and potential tenants are presented with a one-sided and false narrative. (Second Fitzgerald Decl. ¶ 11). The harm to Defendant's reputation, even after successfully defending himself, will endure.

### C. Balance of Equities and Public Interest.

The equities tip heavily in favor of Defendant. On the one hand, issuing the injunction will potentially save Defendant and other witnesses from bodily harm, help ensure that Defendant can appropriately present evidence necessary to his case, and assist the Court in fulfilling its truth-seeking function on a fulsome and accurate record.

On the other hand, Plaintiffs will be only limited from harassing and intimidating conduct, defamatory statements. And their counsel will only be limited from making unfounded public statements and, if appropriate, paying plaintiffs and witnesses. In short, Plaintiffs and their counsel will only be restricted from doing what they would otherwise not be permitted to do.

At worst, the public interest factor is neutral, because "[t]he injunction will have a narrow reach and will not affect anyone other than the parties to this action" and their agents. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). More likely, however, the injunction will promote the public interest because it will allow Defendant and other witnesses to provide accurate evidence to the court. Courts have found "that truthful testimony provided at trial is per se a matter of public concern." *Catletti ex rel. estate of Catletti v. Rampe*, 334 F.3d 225, 229–30 (2d Cir. 2003). Therefore, both the equities and public interest factor tip in Defendant's favor as well.

## IV. CONCLUSION

For the foregoing reasons and reasons to be discussed at the hearing in this matter, Defendant respectfully requests that the Court enter a preliminary injunction as set forth in the contemporaneous motion and proposed order.

Dated: December 15, 2021              Respectfully submitted,

**FOX ROTHSCHILD LLP**

*/s/ Ernest Edward Badway*
ERNEST EDWARD BADWAY

Attorneys for Defendant