UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **CV 20-10713-MWF (RAOx)**          **Date:  January 6, 2022**
Title:    Jane Doe No. 1 et al v. Daniel S. Fitzgerald

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                          Court Reporter:
Rita Sanchez                           Not Reported

Attorneys Present for Plaintiff:       Attorneys Present for Defendant:
None Present                           None Present

**Proceedings (In Chambers):**  ORDER RE: DEFENDANT'S MOTION TO
                                 DISMISS PLAINTIFFS' SECOND AMENDED
                                 COMPLAINT AND FOR MORE DEFINITE
                                 STATEMENT [81]

       Before the Court is Defendant Daniel Fitzgerald's Motion to Dismiss Plaintiffs'
Second Amended Complaint and For More Definite Statement (the "Motion"), filed on
November 15, 2021.  (Docket No. 82).  Plaintiffs filed an Opposition on November 22,
2021.  (Docket No. 93).  Defendant filed a Reply on December 7, 2021.  (Docket No.
104).  A hearing was held on December 20, 2021.

       For the reasons stated below, the Motion to Dismiss is ruled upon as follows:

- Count I: **GRANTED** *with leave to amend* as to Jane Doe Nos. 6 and 10;
  **DENIED** as to Jane Doe Nos. 1–5 and 7–9.

- Count II: **GRANTED** *with leave to amend* as to Jane Doe Nos. 1–10.

- Count III: **GRANTED** *with leave to amend* as to Jane Doe Nos. 5, 6, and
  10; **DENIED** as to Jane Doe Nos. 1–4 and 7–9.

- Count IV: **GRANTED** *with leave to amend* as to Jane Doe Nos. 6;
  **DENIED** as to Jane Doe Nos. 1–5 and 7–10.

- Count V: **GRANTED** *with leave to amend* as to Jane Doe Nos. 5, 6, and
  10; **DENIED** as to Jane Doe Nos. 1–4 and 7–9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)              Date:  January 6, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

- Count VI: **GRANTED** *with leave to amend* as to Jane Doe Nos. 1–10.

- Count VII: **GRANTED** *with leave to amend* as to Jane Doe Nos. 1–10.

## I.    **BACKGROUND**

Plaintiffs commenced this action on November 24, 2020.  (Complaint (Docket No. 1)).  The First Amended Complaint was filed on February 8, 2021 to add Jane Doe No. 4.  (Docket No. 21).  The parties anticipated that additional Jane Does would come forward as the case progressed, so rather than file successive amended complaints as each new Plaintiff joined, the parties entered into multiple stipulations to extend the time for Defendant to file a responsive pleading.  (Docket No. 72 at 2).  On October 28, 2021, Plaintiffs were granted leave to file a Second Amended Complaint ("SAC") that added six additional Plaintiffs and added libel claims related to Defendant's alleged harassment of Plaintiffs and Plaintiffs' counsel after the Complaint was filed. (*Id*. at 6).

The following facts are based on the SAC, which the Court assumes are true and construes any inferences arising from those facts in the light most favorable to Plaintiff.  *See, e.g.*, *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016) (restating generally-accepted principle that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the light most favorable' to the plaintiff") (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009)).

Defendant Fitzgerald owns a real estate development company that specializes in renting luxurious homes to Hollywood celebrities and other "influencers."  (SAC ¶ 12).  Fitzgerald himself is no stranger to luxury, as he is one of the oldest and closest personal friends of Peter Nygard, a wealthy fashion executive known for hosting lavish parties and dinners at his various properties around the world.  (SAC ¶¶ 4, 44).

Nygard, however, was recently indicted by the U.S. Department of Justice ("DOJ") for spearheading a decades-long racketeering enterprise and sex trafficking

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CIVIL MINUTES—GENERAL</u>

**Case No.  CV 20-10713-MWF (RAOx)          Date:  January 6, 2022**
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

venture.  (SAC ¶ 1).  Nygard's venture was enabled by a myriad of accomplices, one of whom was Fitzgerald.  (SAC ¶¶ 1, 45).

Nygard and his associates used fraud, force, and coercion to cause at least dozens of adult and minor-aged female victims to engage in commercial sex by recruiting, enticing, transporting, harboring, and maintaining adult and minor-aged female victims for Nygard's sexual gratification and, on occasion, the gratification of Nygard's personal friends and business associates.  (SAC ¶ 3).

Nygard referred to the women he recruited as his "girlfriends," and he used his influence and threats of physical force to maintain complete control over them.  (SAC ¶¶ 45–49).  For example, Nygard would withhold the women's passports, payment, travel, and lodging unless his demands were met.  (SAC ¶ 232).  And if anyone protested or attempted to fight back against Nygard, they were met with swift and cruel retribution, including physical and sexual assaults.  (*Id.*).

Because Fitzgerald and Nygard's close friendship lasted decades, and because Fitzgerald often attended Nygard's parties and events, Fitzgerald knew that Nygard's "girlfriends" were being forced to commit sexual acts through the use of force, fraud, and coercion.  (SAC ¶¶ 3, 52).  But Fitzgerald did more than stand-by and watch the enterprise unfold – he participated by engaging in "sexual swaps" with Nygard's girlfriends.  (SAC ¶ 5).

A "sexual swap" occurred when one of Nygard's male friends (such as Fitzgerald) would bring Nygard a female "date" in exchange for access to one of Nygard's girlfriends.  (*Id.*)  The women were not consulted in advance that they would be traded for sex, and Nygard often pressured the women to comply with such swaps through manipulation, intimidation, degradation, and threats.  (*Id.*)

Fitzgerald's knowledge is further implicated by his communications with Nygard.  For example, Fitzgerald knew that Nygard was forcing his girlfriends to engage in sex acts because after the sex act Fitzgerald said, "Thanks, Peter!"  (SAC ¶ 50).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)                Date:  January 6, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

Fitzgerald also used his association with Nygard and his attendance at the lavish parties, sometimes referred to as "pamper parties," to benefit and promote himself and his business on social media, and to further the goals of the Nygard enterprise.  (SAC ¶ 61).

Fitzgerald then began to emulate Nygard and attempted to gather a group of women around himself that he could have at his "beck and call" for sexual service.  (SAC ¶ 63).  Like Nygard, Fitzgerald referred to these women as his "girlfriends" and provided them with something of value, such as housing or payment, in exchange for sexual acts.  (*Id.*)  But what the women weren't told is that they would be coerced into sex acts with Fitzgerald and others close to him.  (SAC ¶ 51).

Fitzgerald committed sex acts with these women against their will and would use intimidation tactics to silence them.  (SAC ¶¶ 23, 111).  And Fitzgerald had a propensity for violence if the women did not comply with his demands.  For instance, when Jane Doe No. 4 attempted to leave a Fitzgerald property, Fitzgerald attacked and attempted to suffocate her.  (SAC ¶ 23).  In another incident, Fitzgerald attacked Jane Doe No. 5 and dislocated her shoulder, tore her labrum, and caused severe physical injury to her back and breasts.  (SAC ¶ 24).

Fitzgerald's threats and intimidation tactics did not cease after the filing of this lawsuit.  After the action was initiated, Fitzgerald prepared YouTube videos, social media posts, and paper flyers that accused alleged Jane Does of being felons and revealed private information in an effort to silence them.  (SAC ¶ 208).

The intimidation tactics utilized by Nygard and Fitzgerald have caused Plaintiffs to fear for their well-being and their lives.  (SAC ¶ 206).  The DOJ indictment corroborates that the Nygard enterprise employed various resources to intimidate, threaten, and corruptly persuade individuals who alleged that Nygard was engaged in sexual assault and sex trafficking.  (SAC ¶ 226).  This included paying witnesses for false statements and affidavits; threatening witnesses with arrest, jail, prosecution, civil litigation, and reputational harm; and attempting to cause reputational harm and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-10713-MWF (RAOx)            Date:  January 6, 2022**
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

discredit potential witnesses by disseminating false or embarrassing information. (SAC ¶ 226).

Plaintiffs allege that the intimidation tactics of Nygard are relevant here because the Jane Does in this case are victims of a conspiracy between Nygard and Fitzgerald to sex traffic, rape, and sexually assault them.  (SAC ¶ 243).  Prior to filing this action, Plaintiffs feared for their lives because of Nygard and Fitzgerald's tactics.  (SAC ¶ 245).

Plaintiffs, ten women proceeding under the pseudonym of Jane Doe, bring seven claims against Fitzgerald: (1) violation of the Trafficking Victims Protection Act ("TVPA") (18 U.S.C. § 1595); (2) participation in a venture that violates the TVPA; (3) Conspiracy to commit a violation of the TVPA; (4) Sexual Battery in violation of California Civil Code section 1708.5; (5) Conspiracy to commit Sexual Battery; (6) Libel in violation of California Civil Code section 45; and (7) Libel Per Se in violation of California Civil Code section 45-a.

## II.   **LEGAL STANDARD**

In ruling on the Motion under Rule 12(b)(6), the Court follows *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and their Ninth Circuit progeny.

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Court must disregard allegations that are legal conclusions, even when disguised as facts.  *See id*. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d 990, 996 (9th Cir. 2014).  "Although 'a well-pleaded

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)                Date:  January 6, 2022
Title:      Jane Doe No. 1 et al v. Daniel S. Fitzgerald

complaint may proceed even if it strikes a savvy judge that actual proof is improbable,'
plaintiffs must include sufficient 'factual enhancement' to cross 'the line between
possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550
U.S. at 556-57) (internal citations omitted).

The Court must then determine whether, based on the allegations that remain
and all reasonable inferences that may be drawn therefrom, the complaint alleges a
plausible claim for relief. *See Iqbal*, 556 U.S. at 679; *Cafasso, U.S. ex rel. v. Gen.
Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011). "Determining whether a
complaint states a plausible claim for relief is 'a context-specific task that requires the
reviewing court to draw on its judicial experience and common sense.'" *Ebner v.
Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

### A.   Timeliness of Plaintiffs' Claims

Defendant argues that the TVPA and state-law claims of Jane Doe Nos. 2 and 3
are time barred because in the original Complaint and the First Amended Complaint,
Plaintiffs attached specific dates to conduct that would exceed the TVPA's 10-year
statute of limitations.  (Motion at 4).  But to avoid a facial statute of limitations issue in
the SAC, Plaintiffs omitted any reference to such dates in the amended complaint.
(*Id.*)  Defendant claims that it is too late to avoid the dispositive nature of the
previously alleged facts, and that Plaintiffs may not omit relevant facts in the SAC in
an effort to state a cognizable claim.  (*Id.*)

In response, Plaintiffs first argue that Jane Doe Nos. 2 and 3 have timely claims
because Defendant committed additional violations of the TVPA when he created
videos in an attempt to obstruct the enforcement of Plaintiffs' claims, a violation of 18
U.S.C 1591(d).  Second, Plaintiffs argue that a statute of limitations defense is
inappropriate for consideration on a motion to dismiss when the defense is not apparent
on the face of the complaint.  (Opp. at 3).  Further, because statutes of limitation are
affirmative defenses, which a defendant has the burden to plead and prove, a plaintiff

---

**CIVIL MINUTES—GENERAL**                                                          6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)                Date:  January 6, 2022
Title:      Jane Doe No. 1 et al v. Daniel S. Fitzgerald

is not required to negate the defense through its pleading.  (*Id*.)  And lastly, Doe Nos. 2 and 3's claims should survive because it is premature to assess the sufficiency of their equitable tolling arguments. (*Id*. at 7).

First, Plaintiffs' assertion that Defendant's TVPA claims accrued as recently as July and November 2021 under section 1591(d) is meritless because Plaintiffs do not have a private right of action under subsection (d).  Rather, that provision is limited to government enforcement.  *See Gilbert v. United States Olympic Comm*., 423 F. Supp. 3d 1112, 1143 (D. Colo. 2019) (finding same).  This is further highlighted by Plaintiffs' failure to even allege a violation of section 1591(d) in the SAC.

The subsection states, "[w]hoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both." 18 U.S.C. § 1591(d).  As Defendant correctly argues, the civil remedy provides that the "victim" of a violation of the TVPA may bring a civil action.  *See* 18 U.S.C. § 1595(a).  The "victim" of the obstruction of enforcement set out in section 1591(d) is the state or federal government—the entity "enforcing" the criminal penalties.  (Reply at 4).

Second, the Court acknowledges that Plaintiff retracted previously stated dates that were pled in the FAC, and the Court agrees that Plaintiffs may not omit prior factual allegations in an attempt to state a claim.  In later proceedings, the Court may take judicial notice of Plaintiffs' previously alleged dates if it appears that Plaintiffs are making a bad-faith attempt to circumvent the statute of limitations.

But here, the Court agrees with Plaintiff that it is premature to decide a statute of limitations defense because the SAC does not present a facial statute of limitations issue.  *See Jablon v. Dean Witter & Co*., 614 F.2d 677, 682 (9th Cir. 1980).  Furthermore, it is premature to decide a statute of limitations issue for the independent reason that Plaintiffs alleged plausible facts that may support equitable tolling.  (*See e.g.*, SAC ¶ 230).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)                Date:  January 6, 2022
Title:    Jane Doe No. 1 et al v. Daniel S. Fitzgerald

The Court also recognizes Defendant's argument that equitable tolling is applied "sparingly," and that "[c]ourts have been generally unforgiving [] when a late filing is due to claimant's failure to 'exercise due diligence in preserving his legal rights.'" *Candelaria v. United States*, No. CV04-1773-GHK EX, 2004 WL 5458408, at *5 (C.D. Cal. July 29, 2004) (citing *Scholar v. Pacific Bell*, 963 F.2d 264, 267–68 (9th Cir.1992) (citations omitted).

Plaintiffs, however, have described plausible ways in which Defendant and Nygard may have prevented Plaintiffs from pursuing their claims sooner, which satisfies notice pleading standards. *See* Fed. R. Civ. P. 8(a)(2). Therefore, Plaintiffs are permitted to utilize discovery to find support for their allegations.

Lastly, the Court declines Defendant's request to order Plaintiffs to plead the dates of their claims under Rule 12(e). *See* Fed. R. Civ. P. 12(e). The Court does have broad authority to require a more definite statement, as Defendant asserts, but the Court also has broad discretion of when to require it. Here, the SAC pleads facts to support an argument for equitable tolling, which will inevitably clash with the relevant statute of limitations. This is not simply a legal question, as the Court will have to make a fact-intensive inquiry on whether equitable tolling is appropriate for each individual Plaintiff. Therefore, rather than resolving the issue on a Rule 12(e) motion, "the better practice is to resolve it on summary judgment, after full discovery." *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1160 (9th Cir. 2009).

**B. Claims Under the TVPRA**

Under 18 U.S.C. § 1595(a), the TVPA creates a private right of action for a person who is the victim of sex trafficking under the Act.

A victim . . . may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 20-10713-MWF (RAOx)          **Date:  January 6, 2022**
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

court of the United States and may recover damages and reasonable
attorney fees.

18 U.S.C. § 1595(a).

The language of the statute creates two species of liability: (1) liability for the
perpetrator of a violation; and (2) liability for anyone who knowingly benefits from
participation in a venture that engaged in a violation.

### 1.  Perpetrator Liability (Count I)

To allege that Defendant is a "perpetrator" of a TVPA violation, Plaintiffs must
allege that Defendant (i) knowingly; (ii) in interstate or foreign commerce; (iii)
recruit[ed], entic[ed], harbor[ed], transport[ed], provid[ed], obtain[ed], maintain[ed],
patronize[d], or solicit[ed] by any means a person; (iv) knowing, or, in reckless
disregard of the fact, that means of force, threats of force, fraud or any combination of
such means will be used; (v) to cause the person to engage in a commercial sex act. *See*
18 U.S.C. § 1591(a); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515 (S.D.N.Y. 2018).

### i.     Culpable Conduct

Defendant argues that Plaintiffs fail to allege violative conduct that is
enumerated under the statute because none of the allegations state that Defendant
"recruit[ed], entic[ed], harbor[ed], transport[ed], provid[ed], obtain[ed], maintain[ed],
patronize[d], or solicit[ed] any of the Plaintiffs.  Under Defendant's theory,
participating in a "sexual swap" with a victim under the TVPA does not give rise to
perpetrator liability.

In support, Defendant cites *Fierro v. Taylor* for the proposition that the TVPA is
designed to punish those who are the providers or pimps, not the purchasers or the
johns.  2012 WL 13042630, at *3 (S.D.N.Y. July 2, 2012) (citing *United States v.
Bonestroo*, No. CR 11-40016-01-KES, 2012 WL 13704, at *4 (D.S.D. Jan. 4, 2012)).
But *Bonestroo*, the case *Fierro* relies upon, was expressly overturned by the Eighth
Circuit to clarify that the TVPA equally applies to suppliers and purchasers of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-10713-MWF (RAOx)          **Date:  January 6, 2022**

Title:    Jane Doe No. 1 et al v. Daniel S. Fitzgerald

commercial sex.  *See United States v. Jungers,* 702 F.3d 1066 (8th Cir. 2013) (finding that the verb "obtains" broadly applies to suppliers and purchasers of commercial sex acts).

Had Congress intended to exclude purchasers from §1591(a)(1)'s blanket prohibition of sex-trafficking acts, or intended to limit its application to suppliers, it could have done so expressly.  *Id.* at 1075.  Rather, the verb "'obtains,' by itself, is 'an incredibly broad' verb, devoid of any inherent limitation on the actor or his object." *Id.* at 1071 (citing *United States v. Ramos–Arenas*, 596 F.3d 783, 787 (10th Cir.2010)) (defining "obtains" to include "attaining or acquiring a thing of value in any way," without limiting who ultimately receives it).

Therefore, if Defendant "obtained" a victim under the TVPA through a "sexual swap," and the other elements of the statute are satisfied, Defendant may be liable as the perpetrator of a TVPA violation.

**ii.    Knowledge**

Next, Defendant argues that Plaintiffs fail to adequately allege that Defendant had knowledge that actual force, threats, or coercion would be used to commit a commercial sex act.  (Motion at 11).  Defendant says the pleadings are insufficient because knowledge is pled generally as to the Nygard venture, and Plaintiffs must instead allege that Defendant had knowledge, as to each individual Plaintiff, that force, threat, or coercion would be used to compel Plaintiffs to commit a commercial sex act before the act ever took place.  (*Id.* at 12).

But as the Ninth Circuit has explained, "[w]hat the statute means to describe, and does describe awkwardly, is a state of mind in which the knower is familiar with a pattern of conduct."  *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010).  "What the statute requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution."  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)                Date:  January 6, 2022
Title:    Jane Doe No. 1 et al v. Daniel S. Fitzgerald

        Here, Plaintiffs specifically allege that Nygard procured commercial sex acts through force, fraud, or coercion, and that Defendant had knowledge of this because of his long-term friendship and association with Nygard.  (SAC ¶¶ 3, 52).  Therefore, if any Plaintiff was represented as a "girlfriend" or "employee" of Nygard, Defendant knew or should have known that they were subject to Nygard's control and being forced into a commercial sex act.

        Similarly, for the Jane Does that Defendant recruited as his own "girlfriends," Defendant had knowledge that they too would be forced into commercial sex acts based on his desire to emulate Nygard and Nygard's pattern of conduct.  That is, based on Defendant's familiarity with the Nygard venture, he knew that force and coercion would be required to maintain multiple girlfriends who are waiting at his "beck and call" to perform sexual services.  Moreover, Defendant's knowledge is reinforced by allegations that Defendant did use force against the women he recruited if they attempted to rebuff his commands. (*See e.g.*, SAC ¶¶ 23, 24).

### iii.    Commercial Sex Act

        Lastly, Defendant argues that Plaintiffs fail to allege a "commercial sex act" because the allegations are void of a *quid pro quo* that connects the alleged sex act to a thing of value exchanged.  (Motion at 13).

        "Commercial sex act" is defined in Section 1591(e)(3) as "**any** sex act, on account of which **anything** of value is given to or received by **any** person." 18 U.S.C. § 1591(e)(3) (emphasis added).  "Congress's use of expansive language in defining commercial sex act—using such terms as 'any sex act,' 'anything of value,' 'given to or received by any person' – requires a liberal reading."  *Noble*, 335 F. Supp. 3d at 521.  Indeed, Courts have interpreted this language broadly, including intangible promises of future jobs or career advancement as "things of value."  *See e.g. Ardolf v. Weber*, 332 F.R.D. 467, 478 (S.D.N.Y. 2019).

        At the hearing and in their papers, Plaintiffs urge the Court to adopt the view that "sexual gratification" alone is a "thing of value" under the definition of a

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)            Date:  January 6, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

"commercial sex act."  (Opp. at 21).  Plaintiffs cite *United States v. Cook* in support,
where the court held that the defendant attached value to the sex acts at issue;
therefore, the sex acts could be construed as a "thing of value" to the Defendant.  *See*
782 F.3d 983, 989 (8th Cir. 2015).

But the situation in *Cook* is easily distinguishable.  First, the "thing of value" in
*Cook* was not simply sexual gratification but rather "sexual acts, photographs, and
videos [the defendant] received."  *Id*.  Second, the *Cook* defendant was engaged in
heinous acts of sexual torture that are not relatable to the facts of this case – which is
not to minimize the serious of the allegations here.  *See id*. at 986.

Additionally, adopting a scope this broad could yield absurd results.  *See Ma v.
Ashcroft*, 361 F.3d 553, 558 (9th Cir. 2004) ("[S]tatutory interpretations which would
produce absurd results are to be avoided.").  For example, under Plaintiffs' reading,
any sex acts that Plaintiffs engaged in could be considered a "commercial sex act" if
the consenting partner had reason to know that the Plaintiffs were associated with
either Nygard or Defendant.  Therefore, the Court will not interpret a "thing of value"
to include sexual gratification.

iv.     **Jane Doe Nos. 1–4; 7–9**

Jane Doe Nos. 1–4 and 7–9 are all alleged victims of the Nygard enterprise, and
at some point, each were forced to engage in a "sexual swap" with Defendant.

As explained above, when Defendant participated in a "sexual swap" with
Nygard, he "obtained" a person under the meaning of the statute.  Defendant did so
knowing that the women were being forced, threatened, or coerced into a commercial
sex act because he was familiar with Nygard's pattern of conduct.  And Defendant
himself engaged in a commercial sex act because Plaintiffs were receiving something
of value for participating in the "swap," whether that be compensation, employment, or
avoiding Nygard's wrath.  (SAC ¶¶ 74, 84, 95, 106, 163, 179, 192).

Accordingly, the Motion to Dismiss Count I as to Jane Doe Nos. 1–4 and 7–9 is
**DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)           Date:  January 6, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

### v.      Jane Doe No. 5

Jane Doe Nos. 5 is an alleged victim of Defendant's own sex trafficking enterprise that he attempted to model after Nygard.  (SAC ¶ 6).  Doe No. 5 lived at Defendant's residence and Defendant did not request or require rent to be paid.  (SAC ¶ 121).

Defendant made multiple sexual advances toward Doe No. 5, but after being rebuffed, Defendant then demanded she pay for gas and lift tickets for everyone else because "all [of Defendant's] girls pay in some way or another."  (SAC ¶ 124).  Then on another occasion, Defendant offered Doe No. 5 as the prize for winning a poker game between himself and male players, including Nygard.  (SAC ¶ 126).

Fitzgerald invited Doe No. 5 to Cabo San Lucas, Mexico, with the intent to engage in commercial sex acts with her.  (SAC ¶ 127).  One night in Mexico, when Doe No. 5 was in Defendant's suite, he took all of his clothes off and sexually assaulted Doe No. 5.  (SAC ¶¶ 131–32).  The assault was so violent that it dislocated Doe No. 5's shoulder, tore her labrum, and caused injury to her back and breast tissue. (SAC ¶ 134).

Here, Fitzgerald knowingly obtained, maintained, transported, and harbored Jane Doe No. 5, he did so with knowledge that he, like Nygard, would use force or threats of force to engage in a commercial sex act, and his actions qualify as a commercial sex act because Doe No. 5 received a trip to Mexico and lodging on Defendant's property in exchange for his sexual assault.

Accordingly, the Motion to Dismiss Count I as to Jane Doe No. 5 is **DENIED**.

### vi.     Jane Doe Nos. 6 and 10

Jane Doe Nos. 6 and 10 were both recruited by Defendant and were both victims of Defendant's sexual misconduct, but the alleged conduct does not fall under the TVPA's perpetrator liability statute.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-10713-MWF (RAOx)          Date:  January 6, 2022**
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

First, Plaintiffs allege that Doe No. 6 "rented" a room in a property owned by Defendant.  Plaintiffs do not allege, like for Doe No. 5, that the room was offered free of charge.  In fact, Doe No. 6 alleges that Defendant's sexual gratification was the only "thing of value" exchanged.  (*See* SAC ¶ 139–154).  But as explained above, sexual gratification alone does not fit the definition of a commercial sex act under the TVPA.  Therefore, because nothing of value was exchanged, Defendant did not participate in a commercial sex act with Doe No. 6.

Second, the facts alleged by Doe No. 10 are more akin to date rape than sex trafficking under the TVPA.  Doe No. 10 alleges that Defendant invited her and her roommate to a party hosted by Nygard.  (SAC ¶ 197).  While at the party, Defendant allegedly drugged Doe No. 10's drink and later raped her.  (SAC ¶¶ 199, 202).  Doe No. 10 rode home with her roommate that night and woke the next morning to two $100 bills next to her, which she believes were given to her by Defendant after the rape.  (SAC ¶¶ 203–04).

Defendant's alleged date rape is reprehensible, but not all date rapes are meant to be punishable by a sex trafficking statute.  To be liable under the TVPA, Defendant must have invited Doe No. 10 to the party with knowledge that force, threat, or coercion would be used against her to perform a commercial sex act.  While drugging Doe No. 10 may qualify as using force or coercion, Plaintiffs do not allege that Defendant invited her to the party with knowledge that he or someone else would do such things.  (*See* SAC ¶¶ 194–205).

This situation is different from the other Plaintiffs described above.  When Defendant engaged in "sexual swaps," he knew that Plaintiffs were subject to Nygard's control, and that Nygard kept control through the use of force, threats, and coercion.  And with Doe No. 5, Defendant was modeling his conduct after Nygard, which he knew would require force, threats, or coercion to maintain control.

Accordingly, the Motion to Dismiss Count I as to Jane Doe Nos. 6 and 10 is **GRANTED *with leave to amend***.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)          Date:  January 6, 2022
Title:      Jane Doe No. 1 et al v. Daniel S. Fitzgerald

## 2. Beneficiary Liability (Count II)

To allege beneficiary liability under the TVPA, Plaintiffs must allege that Defendant (i) "knowingly benefit[ted]," (ii) "from participation in a venture," (iii) "which [Defendant] knew or should have known has engaged" in sex trafficking. 18 U.S.C. § 1595(a).  "The term 'venture' means any group of two or more individuals associated in fact, whether or not a legal entity."  18 U.S.C.A. § 1591(e)(6).

The analysis begins by defining the "venture(s)" where Defendant was allegedly a participant.  Plaintiffs argue that two ventures existed: (1) a long-term scheme orchestrated by Nygard ("Nygard's Venture") that included a "network of trusted associates" and Nygard Group employees (SAC ¶ 45); and (2) a venture between Defendant and Nygard ("Defendant's Venture), modeled after the Nygard enterprise, where Defendant was the "kingpin."  (SAC ¶ 6).

The Court agrees with Plaintiffs in part.  Nygard's Venture qualifies as a "venture" under the statute's definition because Plaintiffs allege that Nygard used a network of trusted associates, including employees from within his own company, to create a comprehensive sex trafficking scheme.  (*See e.g.*, SAC ¶ 45).  But Defendant's Venture, as alleged, does not meet the statute's definition.

Plaintiffs fail to identify a "group of two or more individuals associated in fact" to form Defendant's Venture.  Plaintiffs attempt to connect Nygard to Defendant's Venture; however, the only allegation connecting Nygard was his suggestion that Doe No. 4 contact Defendant for a place to live.  (SAC ¶ 107).  But later in the SAC, Plaintiffs specifically allege that Nygard's suggestion to Doe No. 4 was an attempt to keep her under *Nygard's* control – not a contribution to Defendant's Venture.  (SAC ¶ 234).  All other allegations generally indicate that Defendant attempted to imitate Nygard, but they do not implicate Nygard as a participant Defendant's Venture.  (*See e.g.*, SAC ¶ 6).

Next, the Court must determine whether Defendant was a knowing beneficiary of the Nygard Venture.  For Defendant to "knowingly benefit," he must have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)          Date:  January 6, 2022
Title:      Jane Doe No. 1 et al v. Daniel S. Fitzgerald

benefitted either financially or by receiving a "thing of value" from his participation in the venture.  18 U.S.C. § 1595(a).

Plaintiffs do not allege that Defendant was financially compensated for his participation; therefore, the question is whether Defendant received a "thing of value." Other than sexual gratification, which the Court determined is not a "thing of value" by itself, Plaintiffs generally allege that Defendant "use[d] his association with Nygard and the Nygard enterprise, and his attendance at 'pamper parties,' to benefit and promote himself and his business on social media."  (SAC ¶ 61).

The issue with Plaintiffs' pleading is that the "knowing benefit" does not sync with Defendant's alleged participation in the Nygard Venture.  As described above, Defendant participated in the venture through "sexual swaps," which he knew was made possible by Nygard's pattern of offending conduct.  Defendant, however, is not alleged to have used his participation in "sexual swaps" to promote himself and his business on social media.

Plaintiffs instead allege that Defendant's "benefit" came through his participation in Nygard's "pamper parties" because he was able to promote himself and his business from the association.  (SAC ¶ 61).  But under this theory, Nygard's entire guest list could be subject to beneficiary liability under the TVPA.  Furthermore, only Jane Doe No. 10 was alleged to have even attended a Nygard "pamper party," but Doe No. 10 was not associated with the Nygard Venture.  Instead, she was invited to the party by Defendant.  (SAC ¶ 197).

Accordingly, the Motion to Dismiss Count II as to Jane Doe Nos. 1-10 is **GRANTED** *with leave to amend*.

### 3.  Conspiracy to Violate the TVPA (Count III)

To state a claim for conspiracy to violate the TVPA, Plaintiffs must allege "(i) the formation and operation of the conspiracy, (ii) wrongful conduct in furtherance of the conspiracy, and (iii) damages arising from the wrongful conduct."  *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581, 47 Cal. Rptr. 2d 752 (1995).

---

**CIVIL MINUTES—GENERAL**                                    16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)          Date:  January 6, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

Defendant summarily asserts that Plaintiffs fail to allege any instances of conduct that were part of an agreed-upon sex trafficking venture involving Defendant. (Motion at 16).  This, however, is rebutted by the first page of the SAC, which states that "Fitzgerald is a key member of the Nygard Sex Trafficking Racketeering Enterprise," and the purpose of the venture "is to 'recruit, entice, transport, harbor, and maintain adult and minor-aged female victims for Nygard's sexual gratification,' . . . [using] 'force, fraud, and coercion to cause women to engage in commercial sex with Nygard and others.'"  (SAC ¶¶ 2, 4).

As for wrongful conduct in furtherance of the conspiracy, the SAC alleges that Jane Doe Nos. 1–4 and 7–9 were victims of the Nygard Venture, and that each engaged in a commercial sex act with Defendant through "sexual swaps," and that each suffered damages as a result.  Jane Doe Nos. 5, 6, and 10 were not victims of the Nygard Venture, so Defendant's alleged wrongful conduct toward those Plaintiffs is not in furtherance of the conspiracy.

Accordingly, the Motion to Dismiss Count III is **DENIED** as to Jane Doe Nos. 1–4 and 7–9.  But as to Jane Doe Nos. 5, 6, and 10, the Motion is **GRANTED** *with leave to amend*.

### C. Sexual Battery Claims

### 1. Sexual Battery Under California Civil Code Section 1708.5 (Count IV)

Plaintiffs also assert claims for sexual battery under California Civil Code section 1708.5 and conspiracy to commit sexual battery.  (SAC ¶¶ 271–286).  To state a claim under section 1708.5, Plaintiffs must allege that Defendant:

1. Act[ed] with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results[; or]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-10713-MWF (RAOx)          Date:  January 6, 2022**
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

2.  Act[ed] with the intent to cause a harmful or offensive contact with
    another by use of his or her intimate part, and a sexually offensive
    contact with that person directly or indirectly results[; or]

3.  Act[ed] to cause an imminent apprehension of the conduct described in
    paragraph (1) or (2), and a sexually offensive contact with that person
    directly or indirectly results.

Cal. Civ. Code § 1708.5.

Defendant argues that Plaintiffs offer only conclusory allegations related
to Defendant's intent to cause a harmful or offensive contact.  (Motion at 18).
Defendant characterizes the allegations as bare recitals of the sexual battery
statute, which is insufficient to state a claim for relief.  (*Id*.)  Plaintiffs disagree.

To determine whether Plaintiffs sufficiently pled Defendant's intent to
cause sexually "offensive contact," it is helpful reference the statute's definition.
Offensive contact is defined as "contact that offends a reasonable sense of
personal dignity."  Cal. Civ. Code § 1708.5(f).

The allegations specific to each individual Plaintiff meet the "offensive
contact" standard.  In each instance, Plaintiffs describe a sexual encounter
initiated by Defendant that was carried out against the will and without the
consent of each Plaintiff.  (*See* Opp. at 27–28) (summarizing individual
Plaintiffs' allegations).

Because the Court construes all inferences in a light most favorable to
Plaintiffs, Defendant's intent to cause such contact is sufficiently alleged.  For
Jane Doe Nos. 1–4 and 7–9, the victims who were "swapped," Defendant was
aware that Plaintiffs were acting under Nygard's direction and against their will.
Therefore, Defendant knew or should have known that any sexual contact with
these Plaintiffs would offend their sense of personal dignity.  Therefore, the
mere act of performing a "sexual swap" with Nygard sufficiently raises an
inference that Defendant acted with intent to commit sexually offensive contact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)            Date:  January 6, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

The Court reaches the same conclusion as to Jane Doe Nos. 5 and 10.
Doe No. 5 alleges that she was "screaming, crying, and fighting back" while
Defendant sexually assaulted her.  (SAC ¶ 133).  And Doe No. 10 alleges that
Defendant drugged her drink in order to rape her later in the night.  (SAC ¶¶
199, 202).  In each instance, the facts give rise to a reasonable inference that
Defendant acted with intent to cause offensive sexual contact.

As to Jane Doe No. 6, the Court agrees with Defendant that Plaintiffs fail
to sufficiently allege Defendant's intent.  The SAC states only that Defendant
"engaged in sex acts with [Doe No. 6] against her will," which is a conclusory
statement given the context of her involvement with Defendant. (SAC ¶ 144).
The SAC fails to allege any other facts that raise a plausible inference as to
Defendant's intent.  Without these other facts, Doe No. 6's allegations are
conclusory and insufficient to state a claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677
(2009).

Accordingly, the Motion to Dismiss Count IV is **DENIED** as to Jane Doe
Nos. 1–5 and 7–10.  But as to Jane Doe No. 6, the Motion is **GRANTED** *with
leave to amend*.

## 2.  Conspiracy to Commit Sexual Battery (Count V)

To state a claim for conspiracy to commit sexual battery, Plaintiffs must
allege "(i) the formation and operation of the conspiracy, (ii) wrongful conduct
in furtherance of the conspiracy, and (iii) damages arising from the wrongful
conduct."  *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581, 47
Cal. Rptr. 2d 752 (1995).

The Court's analysis of Count III, conspiracy to violate the TVPA,
equally applies to Plaintiffs' alleged conspiracy to commit sexual battery.
Because Nygard was not a participant in Defendant's Venture, Defendant could
not have conspired with him to commit sexual battery against Jane Doe Nos. 5,
6, or 10.  However, because Defendant was a participant in the Nygard Venture,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-10713-MWF (RAOx)**          **Date:  January 6, 2022**
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

Plaintiffs have sufficiently stated a claim for conspiracy to commit sexual battery against Jane Doe Nos. 1–4 and 7–9.

The Court notes that civil conspiracy under California law is typically not a separate tort, but instead a theory of vicarious liability.  Therefore, the Court treats this Count as simply a pleading device to show that Plaintiffs rely on that theory.

Accordingly, the Motion to Dismiss Count V is **DENIED** as to Jane Doe Nos. 1–4 and 7–9.  But as to Jane Doe Nos. 5, 6, and 10, the Motion is **GRANTED** *with leave to amend*.

### D. Libel Claims (Counts VI and VII)

After the Complaint was filed, Defendant allegedly published, or caused to be published, false and harmful statements about Jane Doe Nos. 4, 5, and 6, with knowledge of their falsity, on the internet for public viewing, including accusing them of criminal activity and sexual misconduct, among other things. (SAC ¶¶ 288, 292).

Defendant also created and printed paper flyers portraying Jane Doe No. 5's photograph and name along with false and harmful statements about her, accusing her of criminal activity, and he has distributed these around the community in which Jane Doe No. 5 currently resides.  (SAC ¶¶ 289, 293).

Based on this conduct, Plaintiffs allege two claims for libel:  Libel *por quod* (Count VI) and libel *per se* (Count VII).

Defendant argues that Plaintiffs' allegations are deficient for two reasons. First, Plaintiffs fail to specifically identify the statements or plead the libelous statements verbatim.  (Motion at 19) (citing *Med. Marijuana, Inc. v. ProjectCBD.com,* 46 Cal. App. 5th 869, 893, 260 Cal. Rptr. 3d 237 (2020)). Second, as to Count VI, Plaintiffs fail to allege special damages, which is required to state a claim for libel *por quod*.  (Motion at 20) (collecting cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-10713-MWF (RAOx)                Date:  January 6, 2022**
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

   Plaintiffs respond that they have adequately pled the substance of the libelous statements; that Defendant has superior knowledge of the facts, so their burden is reduced; and that Plaintiffs present verbatim statements in the form of video exhibits and other transcriptions of Defendant's defamatory YouTube videos and social media posts.  (Opp. at 29).  Also, Plaintiffs acknowledge that they failed to plead special damages to support their libel *por quod* claim and volunteer "to provide a more definite statement on this issue."  (*Id*. at 31).

   Defendant's argument is persuasive.  For Jane Doe Nos. 4, 5, and 6, Plaintiffs allege that Defendant "falsely accused them of lying, sexual misconduct, and committing serious criminal activity, among other falsehoods." (SAC ¶¶ 118, 136, 153).  But these allegations fall short of pleading even the "substance" of the statements – what did Plaintiffs lie about? What type of "serious" criminal activity? What other falsehoods?

   Plaintiffs must pinpoint the exact statements that they claim are libelous or else they could create a moving target to later frustrate Defendant's response. As Defendant correctly notes, if Plaintiffs properly plead the statements regarding criminal activity, Defendant could point the Court to public records of such activity, which could be the basis for dismissal under judicial notice. (Motion at 20).

   Plaintiffs' argument that Defendant has superior knowledge of the facts is not applicable here because Plaintiffs allege that the statements were publicly disseminated.  And while Plaintiffs may have attached exhibits related to the libelous statements in other motions, Plaintiffs fail to attach any exhibits to the *pleadings*.

   When Plaintiffs are in possession of the alleged libelous statements, "there is simply no justification for them to set forth in their complaint only the 'substance' of the statements that they claim are defamatory, instead of the actual statements that they assert are false and defamatory."  *Med. Marijuana, Inc*, 46 Cal. App. 5th at 894.

---

**CIVIL MINUTES—GENERAL**                                                                  **21**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)              Date:  January 6, 2022

Title:      Jane Doe No. 1 et al v. Daniel S. Fitzgerald

For these reasons, Defendant's Motion to Dismiss Counts VI and VII is **GRANTED** *with leave to amend*.

IV.   <u>**CONCLUSION**</u>

For the foregoing reasons, the Court rules as follows:

- Count I: **GRANTED** *with leave to amend* as to Jane Doe Nos. 6 and 10; **DENIED** as to Jane Doe Nos. 1–5 and 7–9.

- Count II: **GRANTED** *with leave to amend* as to Jane Doe Nos. 1–10.

- Count III: **GRANTED** *with leave to amend* as to Jane Doe Nos. 5, 6, and 10; **DENIED** as to Jane Doe Nos. 1–4 and 7–9.

- Count IV: **GRANTED** *with leave to amend* as to Jane Doe Nos. 6; **DENIED** as to Jane Doe Nos. 1–5 and 7–10.

- Count V: **GRANTED** *with leave to amend* as to Jane Doe Nos. 5, 6, and 10; **DENIED** as to Jane Doe Nos. 1–4 and 7–9.

- Count VI: **GRANTED** *with leave to amend* as to Jane Doe Nos. 1–10.

- Count VII: **GRANTED** *with leave to amend* as to Jane Doe Nos. 1–10.

Plaintiffs' Third Amended Complaint is due on or before January 24, 2022.

IT IS SO ORDERED.