UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| **Case No.** | CV 20-10713-MWF (RAOx) | **Date:** | February 2, 2022 |
| **Title:** | Jane Doe No. 1 et al v. Daniel S. Fitzgerald | | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:            Court Reporter:
Rita Sanchez             Not Reported

Attorneys Present for Plaintiff:      Attorneys Present for Defendant:
None Present                          None Present

**Proceedings (In Chambers):** ORDER DENYING DEFENDANT'S MOTION FOR PRELIMINARY INJUNCTION [122]

Before the Court is Defendant's Motion for Preliminary Injunction (the "Motion"), filed on December 16, 2021. (Docket No. 122). Plaintiffs filed an Opposition on January 10, 2021. (Docket No. 131). Defendant filed a Reply on January 17, 2021. (Docket No. 135).

The Court has read and considered the papers filed in connection with the Motion and held a video hearing on **January 31, 2022**, pursuant to General Order 21-08 and Order of the Chief Judge 21-124 arising from the COVID-19 pandemic.

For the reasons discussed below, the Motion is **DENIED**. Defendant has failed to meet his burden to demonstrate that injunctive relief is necessary.

## I.   BACKGROUND

Defendant requests injunctive relief to halt three putative affronts to justice: (1) stopping Plaintiffs from harassing Defendant and witnesses; (2) stopping Plaintiffs from publicizing information about this action; and (3) stopping Plaintiffs' counsel from compensating Plaintiffs or witnesses for their testimony. (Mot. at 1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)			Date:  February 2, 2022
Title:	Jane Doe No. 1 et al v. Daniel S. Fitzgerald

### A.   Harassment Allegations

Defendant's harassment allegations are aimed at three separate perpetrators: (1) Plaintiff Jane Doe No. 5; (2) Plaintiffs' counsel; and (3) Plaintiffs' investigator, Gary Marchetti.

#### 1.   Jane Doe No. 5

The Court is already familiar with Defendant and Jane Doe No. 5's volatile past. In its prior Order enjoining Defendant's harassing conduct, the Court recounted the following facts:

> [O]n July 20 and 21, 2021, Defendant allegedly approached the family of Jane Doe No. 5 in Cabo, Mexico. Defendant made disparaging attacks on Jane Doe No. 5's character, interrogated her family to seek information about her assets, and further made threats that indicated Jane Doe No. 5's safety was in danger.  For example, Defendant stated that Jane Doe No. 5 should "be careful," "Mexico is a dangerous place," and that she is "making enemies" which is "not smart."
>
> Later in July 2021, Defendant repeatedly located and followed Jane Doe No. 5 in Cabo, recording her and accusing her of lying about the lawsuit. Then Defendant, or someone acting at his direction, disseminated paper flyers throughout Cabo that included Jane Doe No. 5's name, photograph, height, weight, eye color, gender, Instagram account, a list of aliases, and accusations of criminal activity involving theft, blackmail, extortion, sex trafficking, and the sale of drugs.  The flyer also included the names of Jane Doe Nos. 4 and 6.  Defendant has been seen handing out the flyers on the beach in Cabo, and he has allegedly offered to pay others to hand out the flyers on his behalf.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-10713-MWF (RAOx)       **Date:** February 2, 2022
**Title:**    Jane Doe No. 1 et al v. Daniel S. Fitzgerald

> Plaintiffs claim that on August 5, 2021, Defendant escalated his tactics to cause physical harm to Jane Doe No. 5. While in Cabo, Defendant saw that Jane Doe No. 5 was surfing and paddled out to her location. Jane Doe No. 5 requested that Defendant leave her alone, but instead of complying with her request, Defendant dropped into a wave directly in front of Jane Doe No. 5 and caused her to fall and injure her back.

(First Preliminary Injunction Order (Docket No. 72) at 3–4).

Through the Motion, Defendant now adds his side of the story – although it is unclear exactly when the alleged harassment took place. Defendant does not dispute Plaintiffs' argument that Doe No. 5's actions were in response to Defendant's campaign of harassment against her (Opp. at 11) – not to endorse self-help, but this does bear on the need for ongoing equitable relief..

Defendant offers evidence showing that Doe No. 5 used her presence on social media to issue statements against him that are defamatory if not true. For example, Doe No. 5 posted an Instagram story that said Defendant was "being investigated for pedophilia, rape[,] all kinds of disgusting things." (Mot. at 1). And Doe No. 5 posted other Instagram stories asserting that Defendant is a "rapist pedophile," among other disparaging remarks. (*Id.*).

Doe No. 5's Instagram stories also included calls to action for her followers, but these "threats" mostly related to surfing, *e.g.,* "[i]f anyone of you guys see [Defendant] in Cabo please make sure to burn him and his kook friends on every wave." (*Id.*). Doe No. 5 then reposted the responses she received from her followers, which included threats against Defendant. As an example, Doe No. 5 reposted a message where one of her followers pledged to have his friends "look for [Defendant] in Mexico," and another that said, "[g]et him to come to Hawaii and I'll make him disappear." (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 20-10713-MWF (RAOx)**     **Date:  February 2, 2022**
**Title:**     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

Defendant also attests that Doe No. 5 made threats directly to Defendant's safety, including a threat that she would run over Defendant with her car in retaliation for Defendant's stalking her.  (*Id*. at 2).  Additionally, Defendant claims that Doe No. 5 made false reports to Mexican authorities that caused him to be interrogated.  (*Id*.).

As a result of Doe No. 5's social media activity, Defendant received various comments and messages from Doe No. 5's followers on his own social media account.  From this, which took place roughly six months before filing the Motion, Defendant claims that he "fears for his safety and the safety of his family and friends, and can no longer travel to Mexico and Hawaii for fear of violence from Jane Doe No. 5 or her associates."  (*Id*.).

The Motion also requests relief based on Doe No. 5's communications with Defendant's friend, Ariel Mark, who accompanied Defendant on his trip to Mexico.  Doe No. 5 sent Mark text messages that threatened both him and Defendant.  For instance, Doe No. 5 wrote "[i]f you come near me with [Defendant] I will kill you both."  (*Id*.)

### 2. Plaintiffs' counsel

Defendant claims that Plaintiffs' counsel harassed Steven Powers, a potential witness.  (Mot. at 3).  Powers and Defendant have known each other for many years.  And like Defendant, Powers was a defendant in a similar lawsuit in which Plaintiffs' counsel represented the plaintiffs.  (*Id*.).  Powers chose to settle his case.

Previously, Powers submitted a declaration in support of Plaintiffs' Motion for Contempt that was hostile to Defendant's position.  (*See* First Steven Powers Decl. (Docket No. 89-3)).  After the fact, Powers sent a message to Defendant claiming that Plaintiffs' counsel had "two goons" camped out in front of his home to induce his cooperation.  (Mot. at 3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)	Date:  February 2, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

Defendant claims that this tactic is a form of harassment.  However, when Defendant's counsel presented Powers with a draft declaration that stated he was improperly coerced, Powers refused to sign because Defendant's proposed version of the story was untrue.  (Second Steven Powers Decl. ¶ 5 (Docket No. 131-4)).

Additionally, Defendant claims that Plaintiffs' counsel repeatedly attempted to contact one of his witnesses, Candy Sumlin, to induce her to "testify against Peter Nygard with untrue fabricated illicit statements."  (Mot. at 8).  Plaintiffs' counsel disclaims any such attempted contact and further asserts that they have no knowledge of Sumlin or her previous relationship with Nygard.  (Opp. at 9).

   3.  **Plaintiffs' investigator**

Previously, Jane Roe, an estranged spouse of Doe No. 2, submitted a declaration against Plaintiffs' interests alleging, among other things, that Doe No. 2 was paid by Plaintiffs' counsel to make false statements.  (First Jane Roe Decl. (Docket No. 108-3)).  Defendant claims that Plaintiffs responded by sending their private investigator, Gary Marchetti, to harass and intimidate Jane Roe.  For example, Marchetti repeatedly attempted to contact Jane Roe and sent messages encouraging her to reach out because she may be "in trouble."  (Mot. at 3).

Plaintiffs, however, counter that Jane Roe voluntarily communicated with Marchetti on multiple occasions and never once expressed that she did not wish to be contacted by him.  (Opp. at 5).

B.  **Publicity Allegations**

More than eight months ago, Plaintiffs' counsel participated in a YouTube interview with Chris Hansen, a well-known investigative reporter.  (Mot. at 4).  During the interview, Plaintiffs' counsel described the pending claims and fact allegations made against Defendant.  To date, the video has received less than 12,000 views.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-10713-MWF (RAOx)     Date: February 2, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

Defendant claims that Plaintiffs' counsel's activity in the media is an attempt to make unfounded allegations about Defendant appear as fact, and that counsel is systematically disseminating publications about Defendant to other outlets as well. (*Id.*).

C. **Bribery Allegations**

Defendant claims that Plaintiffs' counsel has improperly paid or offered to pay individuals to make false statements against Defendant's associate, Peter Nygard. (Mot. at 7–8). In support, Defendant offers two declarations. First, Jane Roe declares that Plaintiffs' counsel paid Jane Doe No. 2 a monthly stipend of money to testify as a plaintiff against Peter Nygard in a related case brought by Plaintiffs' counsel. (First Jane Roe Decl. (Docket No. 108-3)). Doe No. 2 allegedly told Jane Roe that she barely remembers who Defendant was, but that she joined this action because Plaintiffs' counsel said she could get a lot of money. (*Id.*).

Second, and in concert with the harassment allegations above, Candy Sumlin testifies that Plaintiffs' counsel's repeated telephone calls to her and her friends also included an offer of money to testify against Peter Nygard. (Candy Sumlin Decl. (Docket No. 121-9)).

II. **LEGAL STANDARD**

Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991) ("Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates"); *see also De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) ( "[T]here is strong precedent establishing the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 20-10713-MWF (RAOx)          **Date:** February 2, 2022
**Title:**     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.").

"[A] district court has the inherent power to issue an injunction against litigants who harass their opponents." *Yates v. Belli Deli*, No. C 07-01405 WHA, 2007 WL 2318923, at *3 (N.D. Cal. Aug. 13, 2007) (citing *De Long*, 912 F.2d at 1147); *see also Lewis v. S. S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976) ("Injunctive relief, where warranted, can be a useful tool to aid a court in controlling the conduct of litigants."). However, "an order imposing an injunction 'is an extreme remedy, and should be used only in exigent circumstances.'" *De Long*, 912 F.2d at 1147 (quoting *In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982)).

Courts may issue an injunction over conduct that is directly related to the lawsuit. *See Myart v. Taylor*, No. SA 5:16-CV-736-DAE, 2016 WL 5376227, at *4 (W.D. Tex. Sept. 26, 2016) (concluding that the court has jurisdiction to prohibit a party's threatening and harassing conduct towards the other parties because the conduct was "directly related to the instant suit."); *Test Masters Educational Servs., Inc. v. Singh*, 428 F.3d 559, 580 (5th Cir. 2005) (upholding a portion of the district court's injunction prohibiting Defendant "from threatening or harassing [Plaintiff], its employees, its staff, [Plaintiff's] counsel, counsel's employees, or counsel's staff.").

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions, and courts apply the same standards to both. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff seeking injunctive relief must show that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his favor; and (4) an injunction is in the public interest. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 982 (9th Cir. 2010) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-10713-MWF (RAOx)          Date: February 2, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

A plaintiff must "make a showing on all four prongs." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Ninth Circuit employs the "serious questions" version of the "sliding scale" approach when applying the four-element *Winter* test. *Id.* at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the [defendant] can support issuance of a preliminary injunction, so long as the [defendant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

### III. DISCUSSION

#### A. Harassment

##### 1. Likelihood of success on the merits

Here, the "merits" refers to Defendant's ability to establish harassment that justifies injunctive relief. *Jeffrey Katz Chiropractic, Inc. v. iBeat, Inc.*, No. 20-CV-02097-RS, 2020 WL 4459122, at *2 (N.D. Cal. May 26, 2020) (citing *United Artists Corp. v. United Artist Studios LLC*, No. CV 19-828-MWF (MAAX), 2019 WL 6917918, at *8 (C.D. Cal. Oct. 17, 2019)). Courts have determined that harassing conduct falls into a narrow exception to the First Amendment's general prohibition against prior restraints and content-based restrictions on speech. *Singh*, 428 F.3d at 580. In other words, harassing speech is not protected speech. As the Fifth Circuit has observed:

> Courts have made a distinction between communication and harassment. *See, e.g., Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S. Ct. 684, 93 L.Ed. 834 (1949). The difference is one between free speech and conduct that may be proscribed. *See, e.g., R.A.V. v. City of St. Paul*, 505 U.S. 377, 389, 112 S. Ct. 2538, 120 L.Ed. 2d 305 (1992). Although restrictions based upon conduct may incidentally restrict speech, the courts have found that such a restriction poses only a minimal burden on speech.... Thus, courts do have the power to enjoin harassing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 20-10713-MWF (RAOx) | Date: February 2, 2022 |
| Title: Jane Doe No. 1 et al v. Daniel S. Fitzgerald | |

communication. *Lewis v. S.S. Baune*, 534 F.2d 1115, 1122 (5th Cir. 1976) (citations omitted). Courts also have the power to enjoin repeated invasions of privacy. *Id.*

*Id*.

"When determining whether to enjoin a litigant's harassing conduct, federal district courts may look to state substantive law on harassment but apply the federal procedural rules under Federal Rule of Civil Procedure 65." *Katz Chiropractic*, 2020 WL 4459122, at *2.

California Code of Civil Procedure § 527.6(b)(3) defines harassment as:

a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

**a. Jane Doe No. 5**

Defendant has put forth sufficient evidence that Jane Doe No. 5 engaged in harassing conduct.  Retaliatory or not, Doe No. 5's actions represent a knowing and willful course of conduct directed at Defendant.  Doe No. 5's social media posts did more than represent her own views about the allegations against Defendant because she made repeated calls to action amongst her large base of social media followers to harass Defendant.

Then, when Doe No. 5's followers responded as instructed, she would repost the responses to intimidate Defendant and to encourage others to act similarly.  This conduct falls clearly within California's definition of harassment as defined by section 527.6(b)(3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)               Date:  February 2, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

### b. Plaintiffs' counsel and Plaintiffs' investigator

The allegations against Plaintiffs' counsel and Plaintiffs' investigator, if true, do not establish harassment that would justify injunctive relief because both sets of allegations fail to meet California's definition of harassment.  While the allegations involve a course of conduct to some extent, like repeated phone calls assertedly made by counsel and counsel's investigator, this course of conduct is not the type that would cause a reasonable person to suffer substantial emotional distress.  And to qualify as harassment under California's definition, the alleged conduct must serve "no legitimate purpose."  Here, attempting to contact potential witnesses and interacting with a voluntary declarant is certainly legitimate in the scope of investigating facts relevant to this litigation.

Moreover, "[c]ourts routinely deny requests for preliminary injunctions 'where the parties fundamentally disagree on the facts underlying the case.'" *Teddy's Red Tacos Corp. v. Vazquez Solis*, No. CV 19-03432-RSWL-AS, 2019 WL 6895983, at *2 (C.D. Cal. Oct. 10, 2019) (quoting *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. CV 18-9536-MWF (ASX), 2019 WL 1974902, at *8 (C.D. Cal. Mar. 11, 2019)); *see also Marina Vape, LLC v. Nashick*, No. LACV1601028JAKJEMX, 2016 WL 9086939, at *8 (C.D. Cal. May 6, 2016) ("[I]f substantial factual disputes are presented, it may be inappropriate to grant injunctive relief.").

As noted in the background section above, the parties are in fundamental disagreement over harassment allegations against Plaintiffs' counsel and Plaintiffs' investigator.  When Steven Powers was presented with a draft declaration that supported Defendant's version of Plaintiffs' pressure tactics, he refused to sign it because the declaration was "untrue."  (Second Steven Powers Decl. ¶ 5).  And as to declarant Candy Sumlin, Plaintiffs' counsel argue that they have had no prior interactions with her, nor did they even know of her prior to the Motion.  (Opp. at 9).

The allegations against Plaintiffs' investigator are similarly disputed.  Jane Roe's declaration states that she "fears for her life," but competing declarations show

**CIVIL MINUTES—GENERAL**                                              10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-10713-MWF (RAOx)          Date: February 2, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

that Jane Roe voluntarily spoke with Plaintiffs' investigator and never expressed her desire to not be contacted. (Gary Marchetti Decl. ¶ 34 (Docket No. 131-2)).

### 2. Irreparable harm

Defendant must establish that "he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. Suffering irreparable harm is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." 11A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2016). Further, the harm identified may not be speculative and Defendant must also show more than the possibility of some remote further injury. *Winter*, 555 U.S. at 21-22 (rejecting "possibility" standard and holding that plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction") (emphasis in original).

Jane Doe No. 5's prior conduct toward Defendant is offensive; nonetheless, Defendant fails to show that irreparable injury is **likely** in the absence of an injunction. Doe No. 5's harassing behavior occurred more than six months ago, yet Defendant only moved for injunctive relief after the Court enjoined his own harassing conduct against Plaintiffs. With this passage of time, Defendant's showing of past harm alone is insufficient to support injunctive relief. *See Villegas v. Schulteis*, No. 1:09-cv-00493-AWI-SKO PC, 2010 WL 3341888, at *3 (E.D. Cal. Aug. 25, 2010) (stating that an injunction requires a "risk of future harm that is more specific than a general fear of future harassment based on alleged past incidents of harassment.").

Defendant further argues that he has suffered financial harm because the publicized statements by Doe No. 5 have harmed his business reputation. (Mot. at 13). Defendant does not cite to anything specific, but even assuming Defendant has suffered financial harm, there are appropriate remedies at law he may pursue to protect his interests.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. CV 20-10713-MWF (RAOx) | Date: February 2, 2022 |
| Title: Jane Doe No. 1 et al v. Daniel S. Fitzgerald | |

The Court previously enjoined Defendant from harassing Plaintiffs and Plaintiffs' counsel, and now Defendant seeks a similar order based on conduct that took place during the same timeframe.  (*See* First Preliminary Injunction Order).  But Defendant's enjoined conduct carried a significant risk of future harm – the underlying conduct here does not. Previously, Defendant created and posted videos to YouTube that harassed Plaintiffs and Plaintiffs' counsel.  An injunction was necessary to curb Defendant's conduct because the publication of the videos presented an ongoing risk of future harm.  As the Court explained:

> Defendant's chosen form of publication guarantees that future injury is likely because the harm is recreated each time someone new views the YouTube videos or social media accounts. Additionally, at the conclusion of the YouTube videos, the narrator states that "more information will be released soon on social media," which indicates that Defendant will publish additional information that identifies and disparages Plaintiffs if the Court does not enjoin Defendant's conduct.

(First Preliminary Injunction Order at 11).

Doe No. 5's prior conduct does not create the same risks of future injury because the online posts were only temporary (Instagram stories are automatically deleted after 24 hours).  More than six months have elapsed since Doe No. 5's alleged harassment with no intervening incidents, making the prior conduct an isolated episode without a likelihood of repetition.  By contrast, Defendant's harassing videos were posted permanently with a promise of more to come.

Therefore, it was necessary for the Court to enjoin Defendant's prior conduct, but here injunctive relief is not warranted.

Prior to the hearing, the Court issued a tentative order that included the above analysis.  Defendant's counsel, as expected, disagreed with the Court's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)          Date:  February 2, 2022
Title:     Jane Doe No. 1 et al v. Daniel S. Fitzgerald

conclusion and further stressed that Defendant's "life is in jeopardy" based on the evidence in the record.  Counsel also argued that he interprets the Court's refusal to enter an injunction as a "license to Plaintiffs and their counsel to obstruct justice."

Counsel's conclusory arguments fail to upend the Court's conclusion that future injury is unlikely.  Without this showing, the Court will not grant injunctive relief.  Moreover, as the Court explained at the hearing, if any Jane Doe Plaintiff or Plaintiff representative engages in future conduct that is harassing under California law, Defendant is encouraged to promptly raise the issue before the Court and it will be dealt with accordingly.  *See Miller v. California Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) ("[A] long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm.").  That said, the Court's only involvement here is to ensure a fair resolution of this lawsuit and not to police the conduct of the parties in general.

### B.     Publicity

Defendant also argues that injunctive relief is necessary to stop Plaintiffs' counsel from creating a "circus-like environment" in the wake of the Peter Nygard case.  (Mot. at 11).  Defendant seeks a gag order that would prevent counsel from making any public statements about the case because, according to Defendant, "by the time this case reaches trial, Defendant will be unable to select a jury that has not been exposed to Plaintiffs' inaccurate media narrative." (*Id.*).

But based on the record before the Court, prejudice to Defendant, if any, can be easily cured through less restrictive means.  Defendant's request for a gag order under these circumstances is like opting for amputation when a bandage will do.  Defendant himself proves this point through the authorities he cites.

Defendant claims that this case is like *Doe v. Rose*, a high-profile case where this Court issued a gag order because, "[s]hould counsel for either side

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 20-10713-MWF (RAOx)           Date:  February 2, 2022
Title:    Jane Doe No. 1 et al v. Daniel S. Fitzgerald

continue to discuss matters with the press, their actions would pose a clear and present danger to the parties' Seventh Amendment rights." No. CV-15-07503-MWF-JCX, 2016 WL 9107137, at *1 (C.D. Cal. Sept. 30, 2016). The Court made this ruling as trial was approaching and the case was receiving significant attention from national media outlets such as ESPN and *People* Magazine. *Id*. A gag order was necessary because the parties were using the press to specifically discuss evidence that had already been ruled, or may yet be ruled, inadmissible at trial. *Id*. at *2.

Defendant's other cited authority also issued a gag order at a time when the case received significant media coverage and trial was less than two weeks away. *Oliver v. City & Cty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736493, at *1 (N.D. Cal. Mar. 25, 2009). In *Oliver*, there was an "impressive collection of newspaper clippings and television broadcasts in which major local media outlets [] reported unfavorably about [the defendant]." *Id*. at *3. The court issued a gag order because jury-selection and courtroom-control measures were not enough to combat the "extensive, long-lasting, and markedly slanted" media coverage generated by the plaintiff's counsel. *Id*. at *4.

By contrast, Defendant's case hasn't even made it beyond the pleading stage – a far cry from the "eve of trial" that typically prompts such a gag order. And Defendant generously conflates the amount of media coverage this case has received. Although Plaintiffs' counsel recorded an interview with a well-known reporter, the recording was not broadcasted by national news outlets – or even local news outlets – instead, the recording is posted on YouTube where anyone can post recorded content. Nor has the video gone "viral," as it was posted more than eight months ago and has received less than 12,000 views.

If media coverage increases as trial approaches, the Court will revisit this issue and decide whether additional jury-selection or courtroom-control measures are appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 20-10713-MWF (RAOx)     Date: February 2, 2022
Title:    Jane Doe No. 1 et al v. Daniel S. Fitzgerald

### C.    Bribery

Defendant further asks to enjoin Plaintiffs' counsel from making payments to witnesses or plaintiffs in exchange for testimony. To support these accusations, Defendant submits two declarations: one from Jane Doe No. 2's estranged spouse and the other from a woman who was allegedly recruited by Plaintiffs' counsel as a potential plaintiff. Both declarants claim that Plaintiffs' counsel has paid or offered to pay women to make unsubstantiated claims against Defendant's associate, Peter Nygard. Unsurprisingly, Plaintiffs' counsel vehemently denies these allegations.

Even if true, these allegations could not serve as a basis for injunctive relief here because there is no allegation that anyone has been compensated to testify *against Defendant*. Both declarations offered by Defendant claim that Plaintiffs' counsel offered to pay individuals for testimony against Peter Nygard. But Peter Nygard is not a defendant in this action. Again, the Court's role here is to ensure that this action is litigated fairly.

At the hearing, counsel for Defendant expressed shock at this conclusion, which in turn puzzled the Court. Vehemence is not the same as argument. Regardless whether the witnesses are in this action or Peter Nygard's, Defendant's request essentially asks the Court to derail this action by turning advocates into witnesses. That would be an extraordinary measure. This Court will not spearhead an investigation of Plaintiffs' counsel based on disputed declarations that lack evidentiary support. Like the parties in any lawsuit, Defendant is free to look for evidence that would cast doubt on the credibility of any plaintiff or witness.

Accordingly, the Motion is **DENIED**.

IT IS SO ORDERED.