**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JANE DOE, Nos. 1-10, | No. 22-56216 |
| *Plaintiff-Appellee*, | D.C. No.<br>2:20-cv-10713-<br>MWF-RAO |
| v. | |
| DANIEL S. FITZGERALD, | OPINION |
| *Defendant-Appellant*, | |
| US ATTORNEY'S OFFICE<br>SOUTHERN DISTRICT OF NEW<br>YORK, | |
| *Real-party-in-interest-<br>Appellee*. | |

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted March 29, 2024
Pasadena, California

Filed May 24, 2024

Before:  Ronald M. Gould, Sandra S. Ikuta, and Danielle J. Forrest, Circuit Judges.

Opinion by Judge Ikuta

---

# SUMMARY[*]

---

**Trafficking Victims Protection Reauthorization Act**

The panel affirmed the district court's order staying proceedings in an action under the Trafficking Victims Protection Reauthorization Act pending the resolution of a criminal action.

Ten plaintiffs sued Daniel Fitzgerald under the civil remedy provision of the TVPRA, 18 U.S.C. § 1595(a), for multiple sex trafficking violations, among other things.  The government intervened and moved to stay the litigation pending the resolution of a criminal action involving a different defendant, Peter Nygard.  The district court granted the stay motion under 18 U.S.C. § 1595(b)(1), which requires that any civil action filed under § 1595(a) "shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim."

Fitzgerald appealed the district court's stay order, arguing that the district court erroneously concluded that a stay was mandated under § 1595(b)(1) and also erred in staying the entire civil action rather than staying only those

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

proceedings that had a connection to the criminal case against Nygard.

The panel held that it had jurisdiction to review the stay order as final and appealable under 28 U.S.C. § 1291 because the stay was lengthy and indefinite and thus placed the litigants effectively out of court. The panel held that a lengthy and indefinite stay order is reviewable as a final decision regardless of whether the plaintiff or defendant appeals the order.

The panel held that the district court properly granted a mandatory stay under § 1595(b)(1) because the following three requirements were met: (1) a criminal action was pending; (2) the criminal action arose out of the same occurrence as the civil action; and (3) the plaintiffs in the civil action were victims of an occurrence that was the same in the civil and criminal proceedings. The panel held that § 1595(b)(1) does not in addition require that the defendant in the civil action be a named defendant in the related criminal action. The panel held that the court could rely on the pleadings to determine whether "same occurrence" requirement was met. Here, comparing the plaintiffs' complaint and the Nygard indictment, the panel concluded that the complaint alleged events that were identical to the events that gave rise to the claims in the indictment.

The panel affirmed the district court's ruling, but it held that the district court erred in concluding that the government has a lower evidentiary burden than other litigants when seeking a stay under § 1595(b)(1).

The panel further held that, if a stay is required under § 1595(b)(1), then the district court must stay the entire action.

## COUNSEL

Ernest E. Badway (argued), Fox Rothschild LLP, New York, New York; Jeffrey R. Whitley, Fox Rothschild LLP, Raleigh, North Carolina; Brandon A. Takahashi, Gordon Rees Scully Mansukhani LLP, Los Angeles, California; for Defendant-Appellant.

Alex J. Shepard (argued) and Marc J. Randazza, Randazza Legal Group PLLC, Las Vegas, Nevada; Mark A. DiCello, DiCello Levitt LLP, Mentor, Ohio; Deborah Dixon, Dixon Diab and Chambers LLP, San Diego, California; Lisa D. Haba, The Haba Law Firm PA, Longwood, Florida; for Plaintiff-Appellee.

Jacqueline C. Kelly (argued), Nathan Rehn, and Won S. Shin, Assistant United States Attorneys; Damian Williams, United States Attorney for the Southern District of New York; United States Attorney's Office for the Southern District of New York, New York, New York; for Real-party-in-interest-Appellee.

**OPINION**

IKUTA, Circuit Judge:

Ten plaintiffs sued Daniel Fitzgerald under the civil remedy provision of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595(a), for multiple sex trafficking violations, among other things. The government intervened and moved to stay the litigation pending the resolution of a criminal action involving a different defendant, Peter Nygard. The district court granted the motion under 18 U.S.C. § 1595(b)(1), which requires that "[a]ny civil action" filed under § 1595(a) "shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." *Id.* § 1595(b)(1). Fitzgerald appeals the grant of the stay. We hold that we have jurisdiction to review the stay order in this case under 28 U.S.C. § 1291, and we affirm the issuance of the stay order.

I

A

In 2000, Congress passed the Trafficking Victims Protection Act (TVPA), Pub. L. No. 106-386, div. A, 114 Stat. 1466 (2000) (codified as amended at 18 U.S.C. §§ 1589–1592), which "created several new federal criminal offenses intended to more comprehensively and effectively combat human trafficking," *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1164 (9th Cir. 2022) (citation omitted). Among other things, the TVPA criminalized engaging in sex trafficking by means of force, fraud, or coercion. *See* 18 U.S.C. § 1591. In 2003, Congress enacted the TVPRA, which, among other things, gives victims a civil cause of

action to seek damages from the perpetrators of criminal sex trafficking violations.  Pub. L. No. 108-193, § 4(a)(4)(A), 117 Stat. 2875, 2878 (2003).[1]  It provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  The TVPRA also requires courts to stay an action brought under § 1595(a) in certain circumstances:  "Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim."  *Id.* § 1595(b)(1).  The phrase "'criminal action' includes investigation and prosecution and is pending until final adjudication in the trial court."  *Id.* § 1595(b)(2).

### B

In December 2020, a New York grand jury charged Peter Nygard, "the leader and founder of an international clothing

---

[1] Congress amended the civil remedy provision in 2008 and 2023 in ways not relevant here.  *See* William Wilberforce Trafficking Victims Protection Reauthorization Act, Pub. L. No. 110-457, 122 Stat. 5044 (2008); Abolish Trafficking Reauthorization Act, Pub. L. No. 117-347, 136 Stat. 6199 (2023).

design, manufacturing, and supply business headquartered in Winnipeg, Canada," with racketeering conspiracy, conspiracy to commit sex trafficking, sex trafficking, and transportation for purposes of prostitution. According to the indictment, which covers the period between 1995 and 2020, Nygard "and others known and unknown . . . used company funds, employees, resources, and influence to recruit, entice, transport, harbor, and maintain adult and minor-aged female victims for Nygard's sexual gratification and, on occasion, the gratification of Nygard's personal friends and business associates by, among other things, sex trafficking, interstate and international transport for purposes of engaging in prostitution and other illegal sexual activities, and related offenses." The indictment further alleged that "Nygard, and others known and unknown . . . used force, fraud, and coercion to cause women to engage in commercial sex with Nygard and others, and to remain with Nygard against their will."

The indictment provided a specific description of how Nygard and his co-conspirators in the racketeering conspiracy allegedly used the Nygard business enterprise to "facilitate and to conceal their racketeering activity." The racketeering conspiracy allegedly involved using funds from Nygard's business enterprise to host events, recruit victims (referred to as "girlfriends"), and arrange for travel, accommodation, and services to those victims for the purpose of luring them into Nygard's sex trafficking scheme. Among other activities, Nygard allegedly invited victims to his residences, including in the Bahamas and in Marina del Rey, California, "where Nygard regularly hosted dinner parties and larger, so-called 'Pamper Parties' for female guests." The "Pamper Parties" were "named for the free food, drink, and spa services that Nygard made available at

such parties."  At these events, Nygard allegedly "engaged in sexual 'swaps' with male friends and business associates, who would bring Nygard a 'date' for sex in exchange for access to one of Nygard's 'girlfriends' for sex."

On December 14, 2020, Nygard was arrested in Canada, where he remains in custody pending extradition to the United States.  Nygard has not yet entered an appearance in the New York criminal case.  In the meantime, the government is engaged in an ongoing investigation into Nygard's co-conspirators.  News reports indicate that Canada has also brought criminal charges against Nygard, resulting in a guilty verdict by a Toronto jury and pending criminal prosecutions in Winnipeg and Montreal.  Vjosa Isai, *Peter Nygard, Former Fashion Mogul, Convicted of Sexual Assault*, N.Y. Times (Nov. 12, 2023), https://www.nytimes.com/2023/11/12/world/canada/peter-nygard-sexual-assault-verdict.html.  At oral argument, counsel for the government stated that Nygard would be extradited to the United States "following the resolution of" the Canadian cases.  The government represented that it could "not provide a date certain" for when Nygard would be extradited, but that "there is forward movement" in the Canadian criminal actions against Nygard.

## C

In June 2022, ten plaintiffs (Jane Doe Nos. 1–10) filed the operative fourth amended complaint (complaint) against Daniel Fitzgerald under the TVPRA's civil remedy provision, § 1595(a), and state law, bringing claims of

violations of § 1591 (sex trafficking), as well as state law
claims. The complaint seeks damages and injunctive relief.[2]

The complaint refers extensively to the Nygard criminal
indictment and alleges that Fitzgerald was a conspirator in
Nygard's sex trafficking venture and also formed his own
sex trafficking venture.[3] For instance, the complaint quotes
the Nygard indictment's allegation that Nygard used "force,
fraud, and coercion to cause women to engage in
commercial sex with Nygard *and others*,'" and claims that
Fitzgerald was "one of the 'others' that participated in the
coerced sexual acts, including with several Plaintiffs in this
case." The complaint also quotes the Nygard indictment's
allegation that Nygard and his associates, including
Fitzgerald, "used fraud, force and coercion to cause at least
dozens of adult and minor-aged female victims to engage in
commercial sex . . . for Nygard's sexual gratification and, on
occasion, the gratification of *Nygard's personal friends* and
business associates." It then alleges that Fitzgerald "was one
of Nygard's 'personal friends' who engaged in the coerced
commercial sex acts with adult and minor-aged female
victims." In addition, the complaint quotes the Nygard
indictment's allegation that Nygard would engage in
"'sexual 'swaps' with male friends and business associates,
who would bring Nygard a 'date' for sex in exchange for
access to one of Nygard's 'girlfriends' for sex." The
complaint alleges that Fitzgerald was "one of the 'male

---

[2] The action was originally filed on November 24, 2020, and later
amended on February 8, 2021, October 30, 2021, January, 24 2022, June
2, 2022, and June, 23, 2022.

[3] Jane Doe Nos. 1–4 and 7–9 allege that they are victims of trafficking
as a result of conspiracy between Fitzgerald, Nygard, and others. Jane
Doe Nos. 5, 6, and 10 allege that they are victims of Fitzgerald's own
sex trafficking venture.

friends' referred to in the [Nygard] indictment." The complaint also alleges that Fitzgerald "was Nygard's companion at the pamper parties and dinners," where "Nygard would instruct his young girlfriends to engage in sex acts" with Fitzgerald. According to the complaint, Fitzgerald "would routinely be at Nygard's house, engaging in numerous commercial sex acts" when Nygard was in Marina del Rey.

The complaint further asserts that some of the plaintiffs were victims of Nygard's sex trafficking venture that was described in the indictment. The complaint alleges that Jane Doe Nos. 1–4 and 7–9 were "survivors of the 'sexual swap' trafficking scheme exploited by" Fitzgerald and Nygard, and that they can attest that "they were 'shared' by Nygard, as part of a coerced sex swap with" Fitzgerald. More specifically, the complaint alleges that Jane Doe No. 1 was swapped and forced to engage in sexual acts with Fitzgerald at a party at Nygard's Marina del Rey property. Jane Doe No. 2 alleges she "was lured into a bedroom at Nygard's Marina del Rey Property" where she was forced to engage in sex acts with Fitzgerald against her will. The complaint likewise alleges that Jane Doe Nos. 3, 4, 7, and 9 were forced to engage in sex acts with Fitzgerald against their will at parties at Nygard's Marina del Rey Property.

In July 2022, Fitzgerald answered the complaint and asserted counterclaims of libel and conspiracy to commit fraud. Fitzgerald alleged that Jane Doe No. 5 attempted to lure him into compromising situations and developed false evidence in order to make false allegations and claims against him.

In October 2022, after discovery commenced in the civil action, the government moved to intervene and stay the

proceedings under § 1595(b)(1), the TVPRA's mandatory
stay provision.  The government contended that there was "a
significant factual overlap between the allegations in the
Complaint and the Nygard indictment," and that some of
Nygard's victims were plaintiffs in the civil action.   The
government   asserted   that   this   overlap   satisfied
§ 1595(b)(1)'s requirements that the civil and criminal
actions "aris[e] out of the same occurrence in which the
claimant is the victim," and therefore a stay was mandatory.
The government also argued that the entire civil action
should   be   stayed,   including   the   claims   relating   to
Fitzgerald's separate sex trafficking venture.   Fitzgerald
opposed the stay, and Jane Doe No. 5 opposed the stay of the
counterclaims against her.

The district court granted the motion as to all claims,
counterclaims, and parties.  It determined that because the
complaint alleged that Fitzgerald was a co-conspirator with
Nygard, and the government asserted that some of the
plaintiffs in the civil action were victims in the criminal
action against Nygard, a stay was mandatory under
§ 1595(b)(1).  The court rejected Fitzgerald's argument that
"there must be a baseline evidentiary threshold to warrant
the requested stay."   According to the district court, the
government had a "lower evidentiary burden" for several
reasons: the government had special knowledge of the
criminal case; the purported purpose of the statute is to
protect the government's "ability to try criminal cases
unfettered by the complications of civil discovery"; and the
government, as opposed to a civil defendant, would not
improperly use § 1595(b)(1) for purposes of delaying a civil
action.   The district court also held that § 1595(b)(1)
required it to stay the entire civil action.   Therefore, the

district court issued a "complete mandatory stay" pending a "final adjudication in the Nygard Case."

Fitzgerald now appeals the district court's stay order, arguing that the district court erroneously concluded that a stay was mandated under § 1595(b)(1) and also erred in staying the entire civil action rather than staying only those proceedings that have a connection to the criminal case against Nygard.

## II

We begin by determining whether we have appellate jurisdiction under 28 U.S.C. § 1291 to review the district court's stay order.

### A

We "have jurisdiction of appeals from all final decisions of the district courts of the United States." *Id.* § 1291. As a general rule, a decision is final under § 1291 "only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). A stay order, therefore, is typically "not an appealable final decision." *Davis v. Walker*, 745 F.3d 1303, 1308 (9th Cir. 2014). The Supreme Court, however, "'has long given' § 1291 a 'practical rather than a technical construction.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

The Supreme Court has held that a stay order is final and appealable if it places the litigants "effectively out of court." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 (1983) (quoting *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2 (1962) (per curiam)).

In *Idlewild*, a district court declined to convene a three-judge panel to consider a federal suit challenging the constitutionality of a state statute, on the ground that it should abstain from deciding the case under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). *See Moses H. Cone*, 460 U.S. at 9 (explaining *Idlewild*). *Idlewild* held that the district court's abstention ruling put the appellant "effectively out of court" and therefore was final and reviewable. *Id.* (quoting *Idlewild*, 370 U.S. at 715 n.2). In *Moses H. Cone*, a district court stayed an action seeking to compel arbitration of a contract dispute pending resolution of the same arbitrability issue in state court. *Id.* at 7. In light of its decision in *Idlewild*, the Supreme Court concluded that the stay order was a final decision under § 1291 because the stay "meant that there would be no further litigation in the federal forum; the state court's judgment on the issue [of arbitrability] would be res judicata." *Id.* at 10. The appellant was therefore "effectively out of court." *Id.*; *see also Quackenbush*, 517 U.S. at 715 (asserting jurisdiction over a district court order that was "functionally indistinguishable" from the order held appealable in *Moses H. Cone*).

*Moses H. Cone* characterized its rule narrowly, stating that "[w]e hold only that a stay order is final when the sole purpose and effect of the stay is precisely to surrender jurisdiction of a federal suit to a state court." 460 U.S. at 10 n.11. However, we have expanded the *Moses H. Cone* doctrine in a series of cases. First, we have applied the doctrine even when a district court's stay order would not necessarily result in surrendering jurisdiction of a federal action to a state court. For instance, in *Lockyer v. Mirant Corp.*, we considered a district court's stay of a state attorney general's antitrust proceeding against a corporation pending the resolution of that corporation's Chapter 11 bankruptcy

petitions.  398 F.3d 1098, 1100 (9th Cir. 2005).  We noted that the parties and the district court thought there was a "substantial possibility" that the bankruptcy proceedings would moot the attorney general's action, although such mooting was not inevitable.  *Id.* at 1102–03.  We concluded that the stay put the attorney general "effectively out of court," and therefore we had jurisdiction to consider the stay order.  *Id.* at 1103.

We took this one step further in *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.*, where we applied the *Moses H. Cone* doctrine in circumstances where the stays at issue were "lengthy and indefinite" even though the district court could be expected to resume proceedings after its stay orders had expired.  490 F.3d 718, 724 (9th Cir. 2007).  *In Blue Cross*, a district court issued several orders staying a civil suit pending the resolution of related criminal proceedings in state or federal court, or both.  *Id.* at 723.  Although "[t]he precise duration of the stays [was] difficult to discern," we noted that "most of the defendants requested stays 'pending the resolution of the criminal investigations and/or prosecutions that have arisen in connection with the acts alleged in plaintiffs' complaint.'"  *Id.*  After reviewing cases in other circuits, we concluded that "lengthy and indefinite stays place a plaintiff effectively out of court."  *Id.* at 724.  While acknowledging that the plaintiffs' civil litigation "may eventually resume," we nevertheless thought that "such stays create a danger of denying justice by delay," raising "the risk that witnesses' memories will fade and evidence will become stale," or that "plaintiffs may go out of business awaiting recovery or face irreparable harm during the time that their suits are on ice."  *Id.* (internal quotation marks and citations omitted).  *Blue Cross* then determined that the district court's stays put the

plaintiffs "effectively out of court" because the stays were "both indefinite and expected to be lengthy." *Id.* The stays "could easily last as long as the five- or six-year limitations period in the criminal cases, or even longer if the government initiates criminal prosecutions shortly before the end of that period." *Id.* And even stays for defendants that lasted "only for the duration of the criminal proceedings already initiated against them, have thus far lasted longer than the 18–month delays that other courts have considered sufficient to place the plaintiffs effectively out of court." *Id.* Therefore, we concluded we had jurisdiction over the stay orders. *Id.*

Finally, we have applied the *Moses H. Cone* doctrine in a case where the duration of the district court's stay order did not depend on the conclusion of proceedings in another court. *See Davis*, 745 F.3d at 1307. In *Davis*, a district court stayed the federal civil rights claim of a prisoner until he was found restored to competency. *Id.* We held that the stay was "both lengthy and indefinite, if not infinite," and had "already lasted longer than the 18-month delay we deemed sufficient for review in *Blue Cross*." *Id.* at 1309. Therefore, we concluded that the stay put the plaintiff effectively out of court, and that we had jurisdiction under § 1291. *Id.*

In sum, our cases have applied the *Moses H. Cone* doctrine broadly. We have asserted jurisdiction over a district court's stay order that effects a lengthy and indefinite stay, regardless whether the district court is surrendering jurisdiction to a state or federal court, and even when it is possible that the district court issuing the stay will resume proceedings after the stay has expired. We have also indicated that an 18-month delay may qualify as a "lengthy" stay for purposes of this doctrine. *Blue Cross*, 490 F.3d at 724; *Davis*, 745 F.3d at 1309. While we have established no

"categorical rule" for how long a stay must last to be considered a final order, 18 months is a "guidepost for our analysis." *In re PG&E Corp. Sec. Litig.*, No. 22-16711, --- F.4th ---, 2024 WL 1947143, at *6 (9th Cir. May 3, 2024).

B

In light of our precedent, we conclude that the district court's stay order here effectively placed the litigants out of court and is therefore a final decision under § 1291. As in *Blue Cross*, this case involves the stay of a civil suit pending the resolution of a related criminal proceeding. Since the district court issued its order in December 2022, the case has been pending for about 16 months. The government does not know when Canada may extradite Nygard, the government's investigation into the alleged criminal enterprise is ongoing, and there is no expected start date for the Nygard criminal prosecution. The length of the district court stay is therefore indefinite. *See Davis*, 745 F.3d at 1309; *In re PG&E Corp.*, --- F.4th at ---, 2024 WL 1947143, at *6 (holding that a stay order was "indefinite" because its end date was "triggered by the occurrence of an external event that is not time limited"). It is also lengthy, since it is nearly certain that the stay will last longer than the 18 months that "we deemed sufficient for review in *Blue Cross*." *Davis*, 745 F.3d at 1309. Because the district court's stay order is "lengthy and indefinite," *id.*, it is a final and appealable order under § 1291.

In contesting this conclusion, the government argues that the *Moses H. Cone* doctrine applies when the stay order places the *plaintiff* effectively out of court, but not when the stay order places the *defendant* out of court, as is the case here. According to the government, the doctrine is intended to allow plaintiffs to vindicate their claims, not provide

defendants an avenue for quicker resolution of the claims against them. We disagree. The Supreme Court has not made such a distinction between plaintiffs and defendants. In *Quackenbush*, for instance, it was the defendant who sought review of the district court's remand order that the Supreme Court held put "the *litigants* in this case 'effectively out of court.'" 517 U.S. at 714 (emphasis added) (quoting *Moses H. Cone*, 460 U.S. at 10 n.11). *Quackenbush* concluded that the remand order was appealable under the *Moses H. Cone* doctrine even though review was sought by the defendant alone. *Id.* at 715. Nor do we see a basis for holding that the identity of the appellant has any bearing on the question whether the stay order constituted a final decision of the district court for purposes of § 1291. The finality of a stay order is not contingent on which party benefits from judicial review of that order. We conclude that a "lengthy and indefinite" stay order "amounts to a dismissal of the suit and is reviewable as a final decision under § 1291," *Davis*, 745 F.3d at 1308 (internal quotation marks and citation omitted), regardless whether the plaintiff or defendant appeals the order.[4]

The government makes several additional arguments based on distinctions between this case and relevant precedent. First, it argues that the stay order at issue here is not final because Fitzgerald failed to show that "the *sole purpose and effect* of the stay" was to surrender jurisdiction of the plaintiffs' civil claims to the court where the relevant criminal action is pending, as was the case in *Moses H. Cone*.

---

[4] Because we decide on this basis, we do not address Fitzgerald's argument that because Fitzgerald raised counterclaims in the underlying suit, he should be deemed to be a plaintiff who is put effectively out of court.

It further argues that Fitzgerald failed to establish that the stay order "amounts to a dismissal of the suit," *Moses H. Cone*, 460 U.S. at 10, or "amounts to a refusal to proceed to a disposition on the merits,'" *Blue Cross*, 490 F.3d at 724. But under our precedent, a district court's stay order need not effect a surrender of jurisdiction to another court, *Davis*, 745 F.3d at 1309, and an "indefinite delay amounts to a refusal to proceed to a disposition on the merits," *Blue Cross*, 490 F.3d at 724. Therefore, the government's arguments fail. The government also contends that the *Moses H. Cone* doctrine does not apply here because the stay is not likely "infinite" as was the case in *Davis*. 745 F.3d at 1309. This argument also fails, because *Davis* did not modify *Blue Cross*'s requirement that the stay order need only be lengthy and indefinite. Finally, the government argues that the *Moses H. Cone* doctrine does not apply here because "the TVPRA itself contemplates the possibility of lengthy stay orders, as it mandates a stay even on the existence of a criminal 'investigation.'" Again, we disagree. While the language of § 1595(b)(1) indicates that the statute permits a lengthy stay order, it sheds no light on whether we have jurisdiction to review that order.[5]

### III

Having confirmed our jurisdiction, we now consider whether the district court erred in issuing a stay under § 1595(b)(1).

---

[5] Because we have jurisdiction under *Blue Cross*, we need not decide whether we also have jurisdiction under the collateral order doctrine. *See In re PG&E Corp.*, --- F.4th at ---, 2024 WL 1947143, at *6 n.8 (declining to conduct an analysis under the doctrine set forth in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), because the appeal clearly fell within *Moses H. Cone*).

We first consider our standard of review. Section 1595(b)(1) imposes a mandatory obligation on the district court: a civil action filed under § 1595(a) "shall be stayed" during the pendency of any criminal action that arises "out of the same occurrence in which the claimant is the victim." Generally, we review the district court's interpretation of a statute de novo. *United States v. Paulk*, 569 F.3d 1094, 1095 (9th Cir. 2009). This principle is equally applicable to a statute mandating a stay. For instance, in the context of the Federal Arbitration Act, 9 U.S.C. § 3, which mandates the imposition of a stay pending arbitration, we have held (along with the majority of circuits) that "the denial of a mandatory stay . . . is a question of law that we review de novo." *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 832 (9th Cir. 2019). *But see Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1167–68 (9th Cir. 2021). To the extent we are reviewing the district court's interpretation of § 1595(b), therefore, our review is de novo.

### A

In considering whether the district court erred in granting the mandatory stay, we begin with the text of the statute. *See United States v. Brown*, 42 F.4th 1142, 1146 (9th Cir. 2022).

Under § 1595(b)(1), "[a]ny civil action filed under [§ 1595(a)] shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." The phrase "'criminal action' includes investigation and prosecution and is pending until final adjudication in the trial court." *Id.* § 1595(b)(2). A civil action filed under § 1595(a) is an action brought by a "victim of a violation" of the TVPRA against a "perpetrator" of the violation or against any person who "knowingly benefits, or attempts or conspires to benefit" in certain ways

"from participation in a venture which that person knew or should have known has engaged in an act in violation" of the TVPRA. Reading these provisions together, the district court "shall" stay a civil action filed under § 1595(a) if (1) a criminal action or investigation is pending; (2) the criminal action arises "out of the same occurrence" as the civil action; and (3) the plaintiff in the civil action is the victim of an occurrence that is the same in the civil and criminal proceedings. *Id.* § 1595(b)(1).

Fitzgerald argues that § 1595(b)(1) imposes a fourth requirement, namely, that a stay must issue only if the defendant in the civil action is a named defendant in the related criminal action. His argument proceeds as follows. First, § 1595(a) provides victims of a violation of the TVPRA with a civil action "against the perpetrator" of a TVPRA violation. Second, § 1595(b)(1) requires that a stay issue only during the pendency of a "criminal action" arising out of "the same occurrence in which the claimant is the victim." Therefore, Fitzgerald concludes, since the victim's civil action arises from the same occurrence that is the basis of the criminal action, it necessarily must be against the same perpetrator.

This argument fails, because it is based on the assumption that if a civil action and criminal action arise out of the same occurrence, then the defendants in the civil action and the criminal action must be the same. But this is not necessarily the case. For instance, where an occurrence involves multiple perpetrators or persons who benefit from a TVPRA violation, the government may choose to prosecute only some of the perpetrators or culpable individuals involved, while a plaintiff may choose to bring a civil action against additional persons involved in the same occurrence. Here, for example, the government may decide

to focus on Nygard alone, regardless whether Fitzgerald was involved in the "same occurrence" giving rise to the Nygard indictment.  *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute . . . generally rests entirely in his discretion." (citation omitted)).  Given that § 1595(b)(1) refers only to the identity of victims, not of perpetrators, we cannot read Fitzgerald's proposed fourth requirement into the statute. *See Ratha*, 35 F.4th at 1176 (stating that the court cannot read additional words into § 1595 without violating "a fundamental principle of statutory interpretation that absent provision[s] cannot be supplied by the courts") (internal quotation marks omitted) (quoting *Rotkiske v. Klemm,* 589 U.S. 8, 14 (2019)).

B

Having identified the three requirements that, if present, mandate the issuance of a stay, we consider whether those requirements are satisfied here.

First, there is no dispute that a criminal action is pending. Nygard has been charged in a criminal indictment, and the government's investigation into Nygard remains ongoing.

We next consider whether this civil action and the Nygard criminal action arose out of the "same occurrence." Because the phrase "same occurrence" is not defined in the statute, our textual analysis "begins by consulting contemporaneous dictionaries, because we are 'bound to assume that the legislative purpose is expressed by the ordinary meaning of the words used.'" *Diaz-Rodriguez v. Garland*, 55 F.4th 697, 712 (9th Cir. 2022) (en banc) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431

(1987)).  In 2003, when the TVPRA was enacted, the word "same" meant "resembling in every relevant respect," Merriam-Webster's Collegiate Dictionary 1099 (11th ed. 2003), and "occurrence" meant "something that occurs" or "something that happens or takes place," *id.* at 858. Therefore, we must determine whether one or more of the events that took place and gave rise to the claims in the plaintiffs' action resembles in every relevant respect one or more of the events that gave rise to the charges in the indictment.

Because the government did not introduce any evidence on this issue, we make this determination based on the pleadings.  Contrary to Fitzgerald's argument that a litigant may not satisfy § 1595(b)(1)'s requirements based on the pleadings alone,[6] courts routinely rely on pleadings to determine whether legal actions overlap or are related.  For example, courts may decide whether two actions arise out of the same "transaction or occurrence" by comparing the allegations in the respective pleadings. *See, e.g.*, *Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (comparing allegations in a complaint with allegations in a counterclaim to determine whether claims arose out of "same transaction or occurrence" for purposes of Rule 13 of the Federal Rules of Civil Procedure).  Courts also review the pleadings to determine whether a civil forfeiture action is sufficiently related to a criminal action in various statutory contexts.  *See United States v. $6,976,934.65, Plus Int. Deposited into Royal Bank of Scotland Int'l, Acct. No. 2029-56141070, Held in Name of Soulbury Ltd.*, 554 F.3d 123, 131

---

[6] Fitzgerald's counsel retreated from this position at oral argument by conceding that if the civil complaint copied the factual allegations in the criminal indictment, the requirements of § 1595(b)(1) would be met.

(D.C. Cir. 2009) (comparing plaintiff's complaint to charging documents in criminal prosecutions in order to determine whether the actions were sufficiently "related" under 28 U.S.C. § 2466 for purposes of disallowing the plaintiff from pursuing a civil forfeiture claim); *In re Ramu Corp.*, 903 F.2d 312, 319–20 (5th Cir. 1990) (reviewing pleadings in assessing the propriety of a stay under 21 U.S.C. § 881(i), which requires a stay of a civil forfeiture proceeding upon filing of an indictment or information "related" to that proceeding and a good cause showing).

In arguing that there must be a "baseline evidentiary threshold" beyond the pleadings, Fitzgerald relies on two unreported district court cases, *Tianming Wang v. Gold Mantis Construction Decoration (CNMI), LLC.*, No. 1:18-cv-0030, 2020 WL 5983939 (D. N. Mar. I. Oct. 9, 2020), and *Cortez-Romero v. Marin J Corp*, No. 2:20-cv-14058, 2020 WL 3162979 (S.D. Fla. June 11, 2020).  Neither is on point.  In *Tianming Wang*, the district court denied the defendant's motion for a stay under § 1595(b)(1) because the defendant had failed to show it was subject to a criminal action, and the criminal action against the defendant's officers was not based on the same occurrence as the civil complaint.  2020 WL 5983939, at *3.  The district court compared the civil complaint and the superseding indictment, and concluded they did not involve the same occurrence.  *Id.* at *4.  In *Cortez-Romero*, the district court denied the defendants' motion to stay a civil action where an indictment had not been issued, and the record did not demonstrate that the criminal investigation arose from the "same occurrence" in which the plaintiffs were the victim.  2020 WL 3162979, at *1.  Neither case held that a party seeking a stay under § 1595(b)(1) must proffer evidence, and both are distinguishable from this case, where the indictment alleges

the same occurrences which are the subject of the civil
complaint.

Comparing the plaintiffs' complaint and the Nygard
indictment here, we conclude that the complaint alleges
events that are identical to the events that gave rise to the
claims in the indictment. To start, a clear connection exists
between the events alleged in the indictment and the events
at issue in the complaint. For instance, the complaint quotes
the indictment's allegations that Nygard used "force, fraud,
and coercion to cause women to engage in commercial sex
with Nygard and others," and alleges that Fitzgerald was
"one of the 'others' that participated in the coerced sexual
acts, including with several Plaintiffs in this case." The
complaint also quotes the indictment's allegations that
"Nygard would engage in sexual 'swaps' with male friends
and business associates, who would bring Nygard a 'date'
for sex in exchange for access to one of Nygard's
'girlfriends' for sex," and alleges that Fitzgerald was "one of
the 'male friends' referred to in the [Nygard] indictment."
Further, the complaint alleges that Fitzgerald was involved
in specific events described in the indictment. According to
the indictment, Nygard hosted "Pamper Parties" and dinners
at his property in Marina del Rey, and forced victims to
comply with his sexual demands. The complaint alleges that
Fitzgerald "was Nygard's companion at the pamper parties
and dinners," where "Nygard would instruct his young
girlfriends to engage in sex acts" with Fitzgerald, and that
Fitzgerald "would routinely be at Nygard's house, engaging
in numerous commercial sex acts" in Marina del Rey. This
establishes that the complaint is based, at least in part, on the
same occurrences that gave rise to the Nygard indictment.

The third element, that the plaintiffs in the civil action
are the victims of the same occurrence alleged in the criminal

action, is also satisfied.  The complaint alleges that seven of
the plaintiffs, Jane Doe Nos. 1–4 and 7–9, "are survivors of
the 'sexual swap' trafficking scheme exploited by
[Fitzgerald] and Nygard," and that "they were 'shared' by
Nygard, as part of a coerced sex swap with" Fitzgerald.  The
complaint also alleges that Jane Doe Nos. 1–4, 7, and 9 were
swapped or forced by Nygard to engage in sexual acts with
Fitzgerald at various events at Nygard's Marina del Rey
property.  Therefore, the complaint sufficiently alleges that
some of the plaintiffs were victims in some of the same
occurrences that gave rise to the criminal action against
Nygard.

We conclude that the three requirements that mandate
the issuance of a stay under § 1595(b)(1) are present, and
therefore affirm the district court's issuance of a stay.
Although we affirm the district court's ruling, it erred in
concluding that the government has a "lower evidentiary
burden" than other litigants when seeking a stay under
§ 1595(b)(1).  The text of § 1595(b)(1) does not give the
government special status when seeking a stay.  Nor does the
government's unique knowledge of the criminal case relieve
it of the burden of showing similarities between the civil and
criminal actions; rather, it puts the government in a better
position than most litigants to do so.  Nevertheless, we may
affirm the district court on any ground supported by the
record, *see Dependable Highway Exp., Inc. v. Navigators
Ins. Co.*, 498 F.3d 1059, 1067 (9th Cir. 2007), and as shown
above, the pleadings reveal that this civil action and the
criminal indictment arose out of the same occurrence, and
that some of the Jane Doe plaintiffs were victims of
Nygard's alleged crimes.

## C

Finally, we consider whether, if a stay is required under § 1595(b)(1), the district court must stay the entire civil action.

Section 1595(b)(1) provides that "[a]ny civil action filed under [§ 1595(a)] shall be stayed" if the requirements for a stay are met.  The term "action" in the legal context refers to the entire legal proceeding.  *See* Black's Law Dictionary 31 (8th ed. 2004) (defining "action" as "[a] civil or criminal judicial proceeding"); Merriam-Webster's Collegiate Dictionary 12 (11th ed. 2003) (defining "action" as "the initiating of a proceeding in a court of justice by which one demands or enforces one's rights; *also* : the proceeding itself"); *Naturaland Tr. v. Dakota Fin. LLC*, 41 F.4th 342, 348 (4th Cir. 2022) ("In the legal context, the term 'action' typically refers to 'an entire case or suit[.]'" (citation omitted)).  Given the lack of "contextual evidence that Congress intended to depart from the ordinary meaning of an undefined term," *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1161 (9th Cir. 2023), we hold that the word "action" in § 1595(b)(1) reflects its ordinary meaning and encompasses the entire civil lawsuit.  Accordingly, the district court properly issued a complete stay of the proceedings.

**AFFIRMED.**